**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 02, 2004**

**Charles R. Fulbruge III**
Clerk

REVISED AUGUST 18, 2004

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 03-30365

---

JENIFER ARBAUGH,

Plaintiff-Appellant,

VERSUS

Y&H CORPORATION, doing business as The Moonlight Café;
and YALCIN HATIPOGLU,

Defendants-Appellees.

---

Appeal from the United States District Court
For the Eastern District of Louisiana, New Orleans

---

Before EMILIO M. GARZA, DeMOSS, and CLEMENT, Circuit Judges.[*]

DeMOSS, Circuit Judge:

Jenifer Arbaugh filed suit against Y&H Corporation ("Y&H") and Yalcin Hatipoglu (collectively, "Defendants"), in November 2001, asserting claims under both Title VII of the Civil Rights Act of 1964 and Louisiana state tort law. After a two-day jury trial in October 2002, a verdict was returned in favor of Arbaugh. In November 2002, Defendants filed a motion to dismiss, contending that Y&H did not qualify as an "employer" under 42 U.S.C.

---

[*] Emilio M. Garza, Circuit Judge, concurring in the judgment only.

§ 2000e(b) because it did not employ 15 or more employees for 20 or more calendar weeks during the relevant time period. The district court ordered both parties to conduct post-trial discovery on the issue. In March 2003, the district court converted the motion to dismiss to a motion for summary judgment. Thereafter, in April 2003, the district court entered an order vacating and reversing Arbaugh's jury verdict and judgment based upon the determination that the court did not have subject matter jurisdiction. Arbaugh filed a timely notice of appeal.

### BACKGROUND AND PROCEDURAL HISTORY

Jenifer Arbaugh was employed as a bartender and waitress at the Moonlight Café, a New Orleans restaurant, from May 2000 until February 2001. During this time, Arbaugh alleges that Hatipoglu, one of Y&H's owners, continually subjected her to a sexually hostile environment. On November 8, 2001, Arbaugh filed suit in federal district court, in Louisiana, asserting claims against Y&H (the operator of the Moonlight Café) and Hatipoglu. Arbaugh alleged sexual harassment in violation of Title VII in addition to state tort law claims. Arbaugh asserted in her complaint that the court had subject matter jurisdiction over her Title VII claim pursuant to 28 U.S.C. § 1331, which confers federal question jurisdiction.[1] Arbaugh further stated in her complaint that she

---

[1] Arbaugh also averred that the court had supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

2

had satisfied the Title VII prerequisite for filing a charge with the Equal Employment Opportunity Commission ("EEOC") and received a "Right to Sue" notice less than 90 days prior to filing her suit in district court.

The parties consented to have the matter heard before a magistrate judge pursuant to 28 U.S.C. § 636(c).[2] Over the course of two days in October 2002, the parties presented evidence to a jury. The jury returned a verdict in favor of Arbaugh, awarding her $5000 in back-pay, $5000 in compensatory damages, and $30,000 in punitive damages. The district court entered final judgment for Arbaugh on November 5, 2002. On November 19, 2002, Defendants filed a motion pursuant to Fed. R. Civ. P. 12(h)(3), in which they sought to dismiss the case for lack of subject matter jurisdiction. Specifically, Defendants argued that during the relevant years Arbaugh was employed there, the Moonlight Café did not employ 15 or more employees for 20 calendar weeks, thus exempting it from Title VII coverage. In March 2003, the district court converted Defendants' motion to dismiss to a motion for summary judgment and ordered both parties to conduct additional post-trial discovery and submit supplemental memoranda to support their respective positions.

On April 4, 2003, the district court granted Defendants'

---

[2] This opinion will refer to the magistrate judge as the district court and her rulings as decisions issued by the district court.

3

motion and vacated and reversed Arbaugh's jury verdict and judgment. In its order and reasons, the district court determined that Defendants did not employ the requisite 15 or more persons during the relevant time periods, explaining that this calculation was exclusive of Y&H's delivery drivers, the two owners of Y&H, and their wives. The district court noted in its order that had the delivery drivers, the two owners, or their wives counted as employees, Defendants would have been subject to the statutory framework of Title VII. Arbaugh timely filed the instant appeal.

## STANDARD OF REVIEW

We review dismissals for lack of subject matter jurisdiction de novo, using the same standards as those employed by the lower court. Beall v. United States, 336 F.3d 419, 421 (5th Cir. 2003); McAllister v. FDIC, 87 F.3d 762, 765 (5th Cir. 1996). We must take as true all of the complaint's uncontroverted factual allegations. John Corp. v. City of Houston, 214 F.3d 573, 576 (5th Cir. 2000). Likewise, this court reviews grants of summary judgment de novo, applying the same standard as the district court. Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d 888, 890 (5th Cir. 2003). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court views the evidence in a light most favorable to the non-movant. Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997). The non-

4

movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex, 477 U.S. at 322.

**DISCUSSION**

**I.  Whether the district court erred in ruling that the number of Defendants' employees determined subject matter jurisdiction rather than an issue going to the merits.**

Arbaugh argues that the threshold issue is not whether Y&H employed 15 or more employees during the relevant time period, but rather whether the employee census finding is relevant to subject matter jurisdiction or whether that determination goes to the merits of the case. Arbaugh argues that while the Fifth Circuit has concluded this issue determines subject matter jurisdiction, this court's rulings do not provide an explanation supporting its conclusion.

Noting a circuit split on this issue, Arbaugh cites the Second Circuit for its observation that:

> Whether a disputed matter concerns jurisdiction or the merits (or occasionally both) is sometimes a close question. Court decisions often obscure the issue by stating that the court is dismissing "for lack of

5

jurisdiction" when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim.

Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 361 (2d Cir. 2000).

Arbaugh relies also on the Seventh Circuit's determination that a plaintiff who files a non-frivolous suit in federal court without more imparts the court with subject matter jurisdiction. Sharpe v. Jefferson Distrib. Co., 148 F.3d 676, 677 (7th Cir. 1998), abrogated on other grounds, Papa v. Katy Indus., Inc., 166 F.3d 937, 939-40 (7th Cir. 1999). Finding that "[a] plaintiff's inability to demonstrate that the defendant has 15 or more employees is just like any other failure to meet a statutory requirement," the Seventh Circuit opined: "Surely the number of employees is not the sort of question a court (including [an] appellate court) must raise on its own, which a 'jurisdictional' characterization would entail." Sharpe, 148 F.3d at 677-78. Arbaugh contends that because she presented to the district court a non-frivolous claim based in part on federal law, without demonstrating anything more, this court is vested with subject matter jurisdiction.[3] Arbaugh suggests that because this court has

_____

[3]Arbaugh also raises judicial economy considerations, noting that the lack of subject matter jurisdiction may be raised at any time, even after a trial on the merits has concluded. She asserts that not only does this circumstance create a waste of judicial resources, but it also presents a situation where a plaintiff's state law claims may be time-barred.

In Jinks v. Richland County, S.C., 538 U.S. 456, 462-65 (2003), however, the Supreme Court recently confirmed the constitutionality of 28 U.S.C. § 1367(d), which provides that state

6

not examined the census/jurisdiction issue sufficiently, we should adopt the well-reasoned approach that the Second, Seventh, and Federal Circuits have followed, and likewise conclude that the census issue goes to the merits of an employment discrimination case.

Defendants, on the other hand, simply argue that we must adhere to our Circuit precedent, established in Dumas v. Town of Mt. Vernon-Alaska, 612 F.2d 974, 980 (5th Cir. 1980), and followed by Womble v. Bhangu, 864 F.2d 1212, 1213 (5th Cir. 1989), and Greenlees v. Eidenmuller Enters., Inc., 32 F.3d 197, 198 (5th Cir. 1994), that a failure to qualify as an "employer" under Title VII deprives a district court of subject matter jurisdiction. Defendants contend that while the Second, Seventh, and Federal Circuits view the statutory definition of an employer as an issue which goes to the merits of the case, the Fifth Circuit is joined by five other circuits in concluding otherwise. Specifically, the Fourth, Hukill v. Auto Care, Inc., 192 F.3d 437, 441-42 (4th Cir. 1999), the Sixth, Armbruster v. Quinn, 711 F.2d 1332, 1335 (6th Cir. 1983), the Ninth, Childs v. Local 18, Int'l Bhd. of Elec. Workers, 719 F.2d 1379, 1382 (9th Cir. 1983), the Tenth, Owens v.

_____

law claims before a federal court pursuant to supplemental jurisdiction are tolled during the pendency of the federal suit. See 28 U.S.C. § 1367(d)(2000). Specifically, section 1367(d) declares that such state law claims "shall be tolled while the [federal] claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." Id. § 1367(d).

7

Rush, 636 F.2d 283, 287 (10th Cir. 1980), and the Eleventh Circuit, Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999), have all concluded that the "employer" definition creates a jurisdictional requirement.

In an attempt to circumvent the Dumas/Womble/Greenlees line of cases, Arbaugh cites Clark v. Tarrant County, Texas, 798 F.2d 736, 741-42 (5th Cir. 1986), in which this court held that where questions concerning subject matter jurisdiction are intertwined with the merits, a Title VII claim should not be dismissed for lack of subject matter jurisdiction unless the claim is frivolous or clearly excluded by prior law. In Clark, the district court granted the defendants' motion for summary judgment, finding that the plaintiffs' employment positions came within the personal staff exemption of Title VII, thus nullifying the claim. Id. at 740. In reversing the district court, the Clark court first determined that subject matter jurisdiction and the merits are "considered intertwined where the statute provides both the basis of federal court subject matter jurisdiction and the cause of action." Id. at 742 (citing Sun Valley Gas v. Ernst Enters., Inc., 711 F.2d 138, 139 (9th Cir. 1983)). The court in Clark concluded:

> The determination of whether appellants come within an exception of Title VII is intertwined with the merits of the Title VII claim. Where the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, and assuming that the plaintiff's federal claim is neither insubstantial, frivolous, nor made solely for the purpose of obtaining jurisdiction, the district court should find that it has jurisdiction over the case and deal with the defendant's

8

challenge as an attack on the merits.

Id. (citation omitted).

However, we find the holding in Clark not to be controlling. Clark was decided in 1986, approximately six years after this court had previously issued its opinion in Dumas. Dumas involved a determination of, inter alia, whether the defendants satisfied the statutory definition of an "employer," thus establishing a basis for liability under Title VII. 612 F.2d at 979-80. After finding that the defendants did not employ the requisite number of employees during the relevant time periods, the Dumas court held that "dismissal of the Title VII claims against [defendants] for lack of subject matter jurisdiction was proper." Id. at 980.

Because we are bound by our prior precedent, Arbaugh's argument that the census issue is not jurisdictional must fail. See United States v. Lee, 310 F.3d 787, 789 (5th Cir. 2002) (citing Martin v. Medtronic, Inc., 254 F.3d 573, 577 (5th Cir. 2001) ("[A] panel of this court can only overrule a prior panel decision if 'such overruling is unequivocally directed by controlling Supreme Court precedent.'" (citation omitted)). We must adhere to the well-established rule that "in the absence of a clearer statement by the Supreme Court or en banc reconsideration of the issue, this panel is bound by circuit precedent." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 n.3 (5th Cir. 1998); see also Gandy v. State of Ala., 569 F.2d 1318, 1325 n.11 (5th Cir. 1978) ("This panel is bound by a prior panel's decision in the absence of

9

intervening en banc reconsideration or Supreme Court precedent.")
(citation omitted).  To the extent that <u>Clark</u> conflicts with our
long-standing precedent first enunciated in <u>Dumas</u>, it is not
binding precedent in this Circuit.  Under our prior precedent rule,
"[o]ne panel of this Court cannot disregard the precedent set by a
prior panel, even though it conceives error in the precedent.
Absent an overriding Supreme Court decision or a change in the
statutory law, only the Court en banc can do this." <u>Davis v.
Estelle</u>, 529 F.2d 437, 441 (5th Cir. 1976).  Because the precise
issue before us was decided in <u>Dumas</u> six years before <u>Clark</u>, and
because <u>Clark</u> was neither a Supreme Court case nor an en banc
decision, we are bound by the holding in <u>Dumas</u> that the employee
census finding is determinative of subject matter jurisdiction.

**II. Whether the district court erred in ruling that Defendants
employed fewer than 15 employees.**

Having concluded that the employee census issue is
determinative of subject matter jurisdiction, we shift our analysis
to whether Defendants employed the requisite number of employees
during the relevant time periods.  Arbaugh argues that the jury's
verdict should be reinstated because Y&H did in fact employ 15 or
more employees during 2000 and 2001, maintaining that the delivery
drivers, the owners of Y&H, and their wives were Y&H's employees.

1.  <u>The Drivers</u>

Arbaugh contends that the district court erred in concluding
that the delivery drivers were not "employees" as defined by Title

10

VII.   Arbaugh first directs us to evidence she presented to the district court concerning the work schedules created by Defendants in which the drivers were assigned schedules identical to those maintained for other employees at the restaurant, i.e., the kitchen and restaurant staff.   Arbaugh notes that the drivers were paid $4.00 per hour and were expected to work all of the hours in their respective shifts.   In addition, Arbaugh argues that the drivers, like all other employees, used Defendants' computer to record the beginning and end of their shifts.   She also presented evidence that Defendants prohibited the drivers from performing work for any other employer during their shifts, regardless of whether there were orders to be delivered.   Arbaugh points to evidence suggesting that when drivers were not delivering orders, they were required to perform other work at the restaurant, which included, inter alia, cleaning, replenishing condiments, and helping prepare salads and desserts to be included in home deliveries.   Arbaugh concedes that the drivers did not appear on the payroll records nor did they have the proper tax deductions taken from their wages.

Defendants maintain that the drivers who delivered food for Y&H were not "employees" for Title VII purposes, but rather independent contractors.   In support of their argument, Defendants cite Broussard v. L.H. Bossier, Inc., 789 F.2d 1158, 1160 (5th Cir. 1986), and the "economic realities" test enunciated therein for determining whether an individual is an employee under Title VII.

While we review a district court's findings of fact for clear

11

error, we review a district court's ultimate determination of employee status <u>de novo</u>. <u>Reich v. Circle C. Invs., Inc.</u>, 998 F.2d 324, 327 (5th Cir. 1993). We first observe that Title VII defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f) (2000) (pending legislation). Recognizing the circularity in such a definition, the Supreme Court explained that "when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 322-23 (1992) (citations and quotations omitted). The Fifth Circuit has recognized that "whether a person is an employee under Title VII is a question of federal law . . . to be ascertained through consideration of the statutory language of the [Civil Rights] Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." <u>Broussard</u>, 789 F.2d at 1159-60 (citation and quotations omitted).

It is well-settled in this Circuit that we determine whether a plaintiff is an "employee" for Title VII purposes by applying the hybrid economic realities/common law control test first advanced in <u>Spirides v. Reinhardt</u>, 613 F.2d 826, 831 (D.C. Cir. 1979), and first adopted by this Court in <u>Mares v. Marsh</u>, 777 F.2d 1066, 1067-68 (5th Cir. 1985). <u>See</u> <u>also</u> <u>Broussard</u>, 789 F.2d at 1160. Although other factors are relevant, the most important factor is "the extent of the employer's right to control the 'means and manner' of

12

the worker's performance." Bloom v. Bexar County, Tex., 130 F.3d 722, 726 (5th Cir. 1997) (citation omitted); see also Broussard, 789 F.2d at 1160.  The factors pertinent to this inquiry include: (1) ownership of the equipment necessary to perform the job; (2) responsibility for costs associated with operating that equipment and for license fees and taxes; (3) responsibility for obtaining insurance; (4) responsibility for maintenance and operating supplies; (5) ability to influence profits; (6) length of the job commitment; (7) form of payment; and (8) directions on schedules and on performing work.  Broussard, 789 F.2d at 1160.

Citing the above factors, the district court found that all eight factors weighed against a finding of control by Y&H.  We agree.  We begin our review by noting that the parties do not dispute that the first four Broussard factors support Defendants' contention that Y&H did not exercise control over the delivery drivers.  Specifically, all of the drivers owned their own vehicles necessary to make the deliveries for Y&H.  The drivers were responsible for all operating costs and for license fees and taxes, as well as for obtaining and maintaining the proper insurance for their vehicles.  In addition, all drivers provided for the maintenance and operating supplies associated with the care of their vehicles.

With regard to the drivers' ability to influence their profits, there was testimony elicited at trial revealing that the drivers were given at least two incentives to maximize the number

13

of deliveries they made, thereby increasing their income: an incentive bonus based on the total dollar value of all deliveries made during their shifts and the income from tips, of which they received 100%.[4]  Therefore, the more deliveries a driver made during a shift, the more money they could potentially earn, thus enabling the driver to maximize their profits.

As for the length of the job commitment, the Broussard court concluded the plaintiffs were not employees, finding it persuasive that the plaintiffs worked "off and on" for a year and that they also worked for nine other companies during this time. 789 F.2d at 1160.  While the parties do not dispute that the drivers were expected to work all of the hours in their respective shifts, there is no evidence that the drivers were prohibited from working elsewhere when not on duty at Y&H.  At trial, testimony was presented indicating that some of the drivers in fact worked other jobs.

With respect to the form of payment, the drivers were paid $4.00 per hour and retained 100% of the tips they received while making deliveries.  Most drivers earned the majority of their income from tips.  For tax purposes, the drivers were issued a Form 1099, as opposed to a Form W-2, which the kitchen and restaurant staff received.  While Y&H withheld the appropriate federal and

---

[4] The drivers were also able to influence their profits by controlling the expenses associated with the vehicle they chose to drive and the amount they chose to spend on operation and maintenance.

state income taxes and paid social security taxes on its kitchen and restaurant staff, it did not do so with its delivery drivers.

The parties presented the district court with conflicting evidence as to the direction Y&H provided the drivers as to both their schedules and the performance of their duties. Arbaugh maintained that Y&H, without input from the drivers, assigned the drivers to specific work schedules which were identical to the schedules it had for other employees. For purposes of establishing that Defendants exercised control over the performance of the drivers' duties, Arbaugh submitted evidence that: (1) the drivers used Y&H's computer to record the start and finish times for their shifts; (2) Defendants required the drivers to work solely for them during the entirety of the their shifts regardless of whether there were orders to deliver; (3) the drivers were responsible for preparing condiments and salads to be included in the orders that came into the restaurant; and (4) the drivers were required to clean their work stations at the end of their shifts.

Conversely, Defendants contend that the schedule making was a collaborative effort between Y&H and the drivers. Defendants insist that the drivers would inform Y&H of the days and times they could work, and based on that information, work schedules for the drivers were prepared and posted. With respect to the control Y&H had over the drivers' performance, Defendants concede the four points raised above by Arbaugh, but insist that: (1) during slow periods the drivers would watch television; (2) the drivers never

15

waited on customers in the restaurant or performed any other duties to assist in the operation of the restaurant; (3) once a driver picked up an order from the kitchen for delivery, it was the driver's responsibility to determine the route and manner of delivery; and (4) neither Hatipoglu nor Khaleghi supervised the drivers while they made their deliveries.

The district court concluded that, even taking as true Arbaugh's version of the facts concerning the setting of the schedules, the evidence failed to demonstrate that Y&H exercised the requisite control over its delivery drivers. Specifically, the district court found that Arbaugh "misunderstands the control factor," citing both Broussard and Cole v. Venture Transport, Inc., 2000 WL 335743 (E.D. La. Mar. 30, 2000), in support of its conclusion. In Cole, the district court found the plaintiff, who contracted with the defendant to provide motor carrier transport to the defendant's customers, was not an employee of the defendant, concluding:

> Last, and most important, although Venture directed when and where plaintiff picked up and delivered cargo, plaintiff alone controlled the manner and means in which she performed her work, including the method of transport, the operation of her vehicle, the route selected, and the selection, hiring and firing of drivers.

2000 WL 335743, at *4. Likewise, in Broussard, this court responded to a truck driver's allegation that she was an employee because of the extensive direction she received in terms of what to do and when to do it, by stating, "[s]he misses the point: she does

16

not really claim direction on how to <u>operate</u> her truck." 789 F.2d at 1160 (emphasis added).

We agree with the district court. Reviewing the district court's factual findings for clear error, we conclude that the district court engaged in a thoughtful, well-reasoned analysis in determining that because the drivers controlled the manner and means by which they operated their vehicles and selected their routes, Y&H did not exercise a right of control over the drivers' performance.

This Circuit has also recognized the additional factors identified in <u>Spirides</u> that are relevant to this inquiry, including:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer;" (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

<u>Broussard</u>, 789 F.2d at 1160 (quoting <u>Spirides</u>, 613 F.2d at 832). The district court cites all <u>Spirides</u> factors as supporting its conclusion that the drivers were not employees of Y&H. Again, we agree.

17

It is clear that at least four of these factors weigh heavily against a finding that the delivery drivers are employees, including the fact that: (1) Y&H did not provide the equipment used by the delivery drivers; (2) the delivery drivers did not receive annual leave; (3) the delivery drivers did not accumulate retirement benefits; and (4) Y&H did not pay the drivers' social security taxes. Also, as mentioned in our discussion of the Broussard factors, there was insufficient evidence in the record establishing that the delivery drivers operated under the direction of a supervisor or that the method of payment was indicative of an employer-employee relationship.

While it may be questionable as to whether any particular "skill" is required in making the deliveries, this factor alone is not dispositive. In addition, although the record demonstrates that each party was capable of terminating the working relationship, we find this determination to be inconclusive. Finally, as to the intention of the parties, the record is void of any type of employment agreement defining the relationship between Y&H and the delivery drivers. In the absence of such documentation, we look to the conduct of the parties in determining their common intent. The parties' relevant conduct reveals Y&H's non-withholding of taxes, its non-payment of social security taxes, the drivers' retention of the tips they earned, and the drivers' payment of their automobile expenses, including mileage. This evidence clearly supports the position that the parties did not

18

intend for there to be an employer-employee relationship.

In sum, determining whether an individual is an "employee" for Title VII purposes is a fact-intensive inquiry, and as with most employee-status cases, there are facts pointing in both directions. Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 305 (5th Cir. 1998) (quotations omitted). However, in the instant case, we are persuaded that the great majority of facts in the record support the conclusion that the delivery drivers were not employees of Y&H. Consequently, unless Y&H's owners or their wives are found to be employees, Y&H did not employ 15 or more employees during the relevant time periods as required for establishing liability under Title VII.

2. The Owners and Their Wives[5]

Arbaugh argues that the owners' wives should be counted as "employees" under Title VII, suggesting that the manner in which they were treated by Y&H is evidence of the alleged employer-employee relationship. Specifically, Arbaugh contends that this evidence includes the fact that the wives: (1) received a salary for their "advertising and publicity" work on behalf of the restaurant; (2) were included on the payroll register; and (3) had

---

[5] Arbaugh concedes that the Supreme Court's recent decision in Clackamas Gastroenterology Associates., P.C. v. Wells,538 U.S. 440, 449-51 (2003), in which it was determined that director-shareholders of a medical clinic are not "employees" under the Americans with Disabilities Act, strongly suggests that Hatipoglu and Khaleghi themselves are not "employees." As such, Arbaugh focuses her appeal on the owners' wives.

the proper taxes deducted from their wages. Arbaugh maintains that because the wives performed services for Y&H and were compensated for those services, the district court erred in not counting them as employees. Defendants respond by insisting that the wives, along with their husbands, are the owners of Y&H. As such, Defendants argue that the wives cannot be counted as employees in light of Supreme Court's recent decision in Clackamas Gastroenterology Associates., P.C. v. Wells, 538 U.S. 440(2003).

In Clackamas, decided after the district court issued its order dismissing Arbaugh's suit, the Supreme Court was faced with whether, in the context of a discrimination suit filed against a medical clinic, the director-shareholder physicians could be counted as employees for purposes of determining whether the professional corporation was subject to the Americans with Disabilities Act. Id. at 442. The Court adopted the following six-factor inquiry advanced by the EEOC as to whether a director-shareholder is an employee:

    [1]  Whether the organization can hire or fire the
         individual or set the rules and regulations of the
         individual's work;
    [2]  Whether and, if so, to what extent the organization
         supervises the individual's work;
    [3]  Whether the individual reports to someone higher in
         the organization;
    [4]  Whether and, if so, to what extent the individual
         is able to influence the organization;
    [5]  Whether the parties intended that the individual be
         an employee, as expressed in written agreements or
         contracts;
    [6]  Whether the individual shares in the profits,
         losses, and liabilities of the organization.

20

Id. at 449-50 (quotations and citation omitted). The Court recognized that whether a director-shareholder is an employee "depends on all of the incidents of the relationship . . . with no one factor being decisive." Id. at 451 (internal quotation marks and citation omitted).

In its ruling, the district court, without the guidance of Clackamas, observed again that this Circuit has adopted the economic realities test to resolve whether a person is an employee for purposes of Title VII. It was deduced that this Circuit would look to the same test to determine whether a person is a partner or an employee of a corporation. The district court first concluded that Hatipoglu and Khaleghi themselves were not employees for Title VII purposes. It found that Hatipoglu and Khaleghi were partners who divided the profits and the responsibilities of running the business equally. The district court also found convincing Defendants' argument that no one other than themselves had control over all aspects of the business.

With regard to the two wives, the district court observed that neither did any work at the restaurant. The only services recognized by the district court were the occasional advertising and promotional work they performed. The district court determined that in applying all the factors of the economic realities test, the only one favoring a finding of an employment relationship was that social security taxes were paid on their income from the business. The district court therefore concluded that the wives

21

were passive partners rather than employees.

Applying the six-factor test established in Clackamas to the facts in the instant case, we conclude that the district court ultimately reached the correct result, albeit based on different reasoning. First, it is unlikely that Y&H could hire or fire any of these four individuals. Instead, Hatipoglu, Khaleghi, and their respective wives are partners who, if it was decided that the working relationship was unpalatable, would have to engage in a dissolution process in accordance with the corporate structure under which they were originally organized.[6] Second, there is no evidence demonstrating that the wives were supervised in their advertising and promotional work, nor is there any indication that they reported to anyone higher in the organization.

There is no evidence in the record as to whether either wife had any influence over Y&H's operations. With regard to the intention of the parties, the wives were not designated as employees either in written agreements or contracts. In fact, there is no record evidence evincing any intended nature or scope of employment. Finally, the record clearly establishes that the wives, along with their husbands, shared alike in Y&H's profits, losses, and liabilities.

As such, although the district court did not have the direction provided by Clackamas at the time it issued its order, we

---

[6] Y&H was organized as a Subchapter S corporation.

22

conclude that the district court nevertheless properly determined that Hatipoglu, Khaleghi, and their respective wives should not be counted as employees for purposes of determining Title VII liability.

**CONCLUSION**

Having carefully reviewed the record of this case, the parties' respective briefing and arguments, and for the reasons set forth above, we find the district court properly followed our Circuit precedent in concluding that the number of employees determines a court's subject matter jurisdiction in a suit filed pursuant to Title VII. Second, the district court correctly concluded that neither the delivery drivers, nor the owners of Y&H, nor their wives should be counted as employees. While the district court's conclusion with regard to the owners and their wives was based on the economic realities test, the same conclusion is reached pursuant to the six-factor inquiry recently announced by the Supreme Court in Clackamas. Because it is undisputed that Y&H did not employ the requisite 15 employees without the inclusion of the drivers, the owners, or their wives, Defendants are not subject to liability under Title VII, and thus the district court properly dismissed Arbaugh's suit for lack of subject matter jurisdiction. **AFFIRMED.**