United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 11, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-10409

RAYMOND S. KHOUW, M.D.,

Plaintiff-Appellant,

versus

METHODIST HOSPITALS OF DALLAS,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
(02-CV-1126)

Before GARWOOD, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Raymond S. Khouw, M.D. ("Khouw"), a medical doctor specializing in obstetrics and gynecology, brought this appeal challenging the district court's interpretation of a settlement agreement that he entered into with the Methodist Hospitals of Dallas ("MHD").[1] One of the express provisions of the settlement agreement required Khouw to permanently resign from MHD. Khouw

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Khouw actually was a member of the medical staff and had clinical privileges with Charlton Methodist Hospital -- which was a hospital operated by MHD -- in the fields of obstetrics and gynecology.

opines that he entered into the agreement with the understanding that the term "permanently" was intended to signify a lesser quantum of time, and was simply illusory in the overall context of the agreement. For the reasons set forth below, we refuse to indulge Khouw's strained interpretation of the settlement agreement's plain terms, and hold that the district court's grant of MHD's motion for summary judgment was appropriate. Consequently, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Khouw's association with MHD began in September of 1987. He was subsequently implicated in a series of incidents which called into question his professional competency. Khouw had a medical malpractice action brought against him in 1991 stemming from his role in the November 1989 delivery of an infant. This matter was eventually resolved pursuant to an agreement reached between the parties, and concurrently, MHD determined that Khouw's conduct did not fall below professional standards of care. In the latter part of 1992, nurses who worked in association with Khouw became concerned that he was not attending to his patients in a timely nor appropriate manner, particularly as compared to other obstetricians also working under the auspices of MHD. Additionally, these nurses complained that Khouw was unresponsive to their concerns, and as such, directed their complaints to an MHD OB/GYN Executive Committee. The complaints were reviewed and, in April of 1993, Khouw was temporarily suspended while a more thorough investigation was conducted into the allegations.

Concerned about the prospect of a damaged professional reputation stemming from the fact that MHD would likely have to report his summary suspension to the Texas Board of Medical Examiners and the National Practitioner Data Bank, Khouw entered into settlement negotiations with MHD. On July 13, 1993, Khouw and MHD reached a settlement agreement wherein Khouw would

2

"voluntarily and permanently resign[ ] from the MHD Medical Staff," and MHD would discontinue its investigation of Khouw. Moreover, if a prospective employer were to inquire about Khouw's tenure with MHD, the settlement agreement provided that MHD could only state that Khouw worked on MHD's Medical Staff from September 1987 until July 1993 when he resigned, and that any further questions were to be directed solely to Khouw.

Khouw subsequently brought this action, alleging that MHD had not complied with the express terms of the settlement agreement, specifically averring that MHD improperly handled prospective employers' inquiries concerning the circumstances of his resignation. Khouw also brought a series of claims contending that MHD's conduct violated federal antitrust and civil rights laws. These secondary allegations derive from the fact that following the closing of several local area hospitals, Khouw sought to reapply for obstetrical privileges with MHD in 2002. MHD refused to provide him with an application based on the express terms of the settlement agreement wherein, of course, he had agreed to permanently resign from his position.

## ANALYSIS

When this court reviews a district court's grant of summary judgment, we review the decision *de novo* and apply the same standard as the district court. Arbaugh v. Y&H Corporation, 380 F.3d 219, 222 (5th Cir. 2004). Similarly, the standard of review governing the interpretation of a contract is *de novo*. Travelers Ins. Co. v. Liljeberg Enter., Inc., 7 F.3d 1203, 1206 (5th Cir. 1993). Texas contract law governs this dispute. Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc., 334 F.3d 423, 428 (5th Cir. 2003). Though we are called upon to analyze a settlement agreement, we employ the same interpretive canons as we would with a traditional contract. See White Farm Equip. Co. v. Kupcho, 792 F.2d 526, 529 (5th Cir. 1986).

Under Texas contract law, our principal consideration "is to ascertain and to give effect to the intentions of the parties as expressed in the document." R&P Enter. Inc. v. Laguarta, Gavrel, Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980). This includes insuring that every provision of the contract has some import, and that no terms are rendered meaningless. See, e.g., MCI Telecomm. Corp. v. Tex. Utilities Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999); Universal CIT Credit Corp. v. Daniel, S.W.2d 154, 157-58 (Tex. 1951). Another concern related to the interpretation of a contract involves whether it is indeed ambiguous. If a contract can be read such that "it can be given a certain or definite legal meaning . . . then it is not ambiguous and the court will construe the contract as a matter of law." Coker v. Coker, 650 S.W.2d 391 (Tex. 1983). However, a contract may be deemed ambiguous if "its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." Id. In making a determination as to whether a contract is ambiguous, a court must look "at the contract as a whole in light of the circumstances present when the contract was entered." Nat'l Union Fire Ins. Co. v. CBI Indust. Inc., 907 S.W.2d 517, 520 (Tex. 1995).

We find that the terms of the settlement agreement are unambiguous. It is beyond cavil that between the period of time when the settlement agreement was signed and this action was brought, both Khouw and MHD received the mutual contractual benefits they had sought via the agreement. Principally, in exchange for Khouw's tendering of his permanent resignation, MHD agreed to end its investigation into allegations regarding Khouw's professional conduct. During oral argument, Khouw's counsel argued that the use of the term "permanently" in the settlement agreement was not intended to suggest that Khouw was foreclosed from ever seeking to reapply for obstetrical privileges with MHD. However, when queried as to whether Khouw's interpretation also meant that MHD was entitled to resume its investigation of Khouw, counsel argued that MHD could not reinitiate the

4

investigation – because the express terms of the agreement governed. We find such reasoning illogical, as only MHD would be bound by the settlement agreement's language. This understanding would contravene traditional contract principles, particularly when, in an instance such as this, the contracting parties have made dependent mutual promises to one another. See Nutt v. Members Mut. Ins. Co., 474 S.W.2d 575, 578 (Tex.App.-Dallas, 1971). Moreover, Khouw's interpretation would essentially render the word "permanently" a nullity, even though it is well understood that "[a]n interpretation that gives a reasonable meaning to all provisions is preferable to one that leaves portion of the [contract] useless, inexplicable, or creates surplusage." Lyons v. State Farm Lloyds and Nat. Cas. Co., 41 S.W.3d 201, 206 (Tex.App.-Houston[14th Dist.], 2001). Therefore, we hold that under the settlement agreement's plain terms, MHD was perfectly within its rights when it refused to consider Khouw's application seeking obstetrical privileges with MHD some ten years after he had agreed to permanently resign.

## CONCLUSION

Accordingly, the district court's grant of MHD's motion for summary judgment was correct and must be affirmed.

AFFIRMED.

5