**United States Court of Appeals**

**Fifth Circuit**

**F I L E D**

**June 28, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-11157
Summary Calendar

EVONNE JENKINS,

Plaintiff-Appellant,

versus

BALL CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Evonne Jenkins appeals from the district court's grant of Ball Metal Beverage Container

Corporation's ("Ball Corporation") motion for summary judgment. She had argued that she was the

victim of racial, age, and gender discrimination because she was denied a promotion she had sought,

and which she averred that a lesser qualified individual received. We have reviewed the entirety of

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the record.  Because we conclude that the district court was unassailably correct in its determination that no genuine issues of material fact were in dispute, we affirm the grant of summary judgment.

## FACTUAL AND PROCEDURAL HISTORY

Evonne Jenkins, an African-American female, has been employed by Ball Corporation, or one of its predecessors in interest, since 1979.  She originally brought this action asserting that she had been discriminated against on the basis of her race, age, and gender, and further alleged that she had been retaliated against.  In her capacity with Ball Corporation, she worked as a Chemical Process Operator (CPO).  However, the circumstances surrounding her desire to be promoted to the position of Chemical Process Maintainer (CPM)[1] form the underlying factual basis for her discrimination claims.

Ball Corporation was seeking to fill two open CPM position within the company and Denise Reyes, Glenn Hubert, and Gilbert Gutierrez (collectively "the interviewers") were responsible for interviewing applicants.  In late June of 2001, five Ball Corporation employees were interviewed: Aaron Tan, Bruce Callison, Corey Underwood, Clara Faulkner, and Jenkins (collectively "the interviewees").  As part of the interview process, the interviewees were each given a twenty-five question test that had both subjective and objective components.  For example, the interviewees were

---

[1] The district court identified in its order granting Ball Corporation's motion for summary judgment, the requirements for holding the title of CPM.  The district court found that CPM's were "responsible for maintenance and repair of the chemical process machinery, as well as routine operational activities in the Chemical Process Operations area, including but not limited to: providing mechanical assistance in the Chemical Process area as well as in other areas of the plaint as needed; operating and maintaining the wastewater treatment system to ensure the system is operating within specific parameters; monitoring, maintaining and repairing equipment and machinery used in chemical processing; installing and repairing plumbing as needed; and equipment troubleshooting."  While this job description was provided by Ball Corporation in its briefing to the district court in support of its motion for summary judgment, it has never been argued by Jenkins that the responsibilities delineated by Ball Corporation were inaccurate.

required to answer questions involving, *inter alia*, basic mathematical computations, their understanding of the proper safety measures to be undertaken should an emergency arise, their reasons for wanting the CPM position, and their knowledge regarding certain mechanical, technical, and chemical terminology. Following each answer provided during the course of the interview, the interviewers would assess the response on a sliding scale ranging from 1 - 5. However, the interview was not the *sine qua non* of Ball Corporation's hiring process, as the company also took into consideration other factors including the extent of the interviewees technical and mechanical experience.[2] Eventually, Aaron Tan and Bruce Callison were hired for open CPM positions.

Jenkins subsequently brought this action in the United States District Court for the Northern District of Texas, challenging the fact that she was not hired for one of the open CPM positions. She asserted that amongst the principal reasons why she was not hired was the interviewers' discriminatory animus. Particularly, she argued that as between herself and Tan, his interview scores and mechanical and technical background were neither quantitatively nor quantitatively better than her own. In response, Ball Corporation moved for summary judgment, asserting that Jenkins's allegations were conclusory and lacked merit. Moreover, the company observed that even if there was some substance to Jenkins's contentions such as would arguably establish a *prima facie* case of discrimination, she still could not satisfy her summary judgment burden by demonstrating that there was a genuine issue of material fact in dispute because Jenkins could not produce any evidence that would suggest that the reasons asserted by Ball Corporation for not promoting her were pretextual.

---

[2] Because greater technical savvy was apparently a prerequisite for promotion to the CPM position, the company provided a formal course of study known as the Technical Training Program (TTP), which was intended to provide those aspirants seeking promotions an alternative means of gaining technical experience. Aaron Tan was among those interviewees who participated in the TTP.

The district court found that Ball Corporation was entitled to summary judgment, observing that Jenkins had failed to present any evidence that would support her averment that the reason that she was not promoted to the CPM position was because of intentional discrimination. Several factors were weighed by the district court. First, the court observed that Jenkins could not establish a *prima facie* case, as she had not shown that she was even qualified for the CPM position at the time she was interviewed. In support of this finding, the district court referenced her concessions made during the course of her deposition, wherein she acknowledged that had she been hired she would have lacked the requisite degree of technical experience that was required for the CPM position.

Moreover, the district court then assumed *arguendo* that she had established her *prima facie* case and found that Jenkins *still* would not have defeated Ball Corporation's motion for summary judgment. The court noted that Ball Corporation had determined that the individuals who had been hired, Aaron Tan and Bruce Callison, were simply more qualified than was Jenkins – thus constituting a legitimate nondiscriminatory reason to rebut Jenkins's would-be *prima facie* case. As such, Jenkins was required to proffer some evidence suggesting that the reasons advanced by Ball Corporation were in fact a pretext for discrimination. The district court again found that Jenkins could not meet this burden, and held that Ball Corporation was entitled to summary judgment because there were no genuine issues material of fact in dispute.

Additionally, the district court found that Ball Corporation was entitled to summary judgment as to Jenkins's claim that she was the victim of retaliation. Apparently Jenkins had argued that her superiors spoke derisively towards her and recommended that she receive a suspension because she had accidently ruined thirty-one pallets of aluminum cans. However, she was not suspended for this incident. Accordingly, the district court determined that she had not satisfied her necessary burden

to support her contention that she had been retaliated against, principally because no showing had been made that she had suffered an adverse employment decision.

Jenkins timely appealed, asserting that the district court made two significant errors.[3]  First, she believes that the district court incorrectly struck evidence that she sought to have included in the record.  Jenkins believes that had the district court not stricken this evidence, she would have been able to survive Ball Corporation's motion for summary judgment.  Secondly, Jenkins argues that the district court's grant of summary judgment was improper because -- notwithstanding her belief that the district court erroneously struck important evidence -- she had provided sufficient evidence to demonstrate that the reasons offered by Ball Corporation for why she was not promoted to the CPM position were pretexts for racial and age discrimination.

## ANALYSIS

A party's motion for summary judgment will be granted " if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c). The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106

---

[3] We note at the outset that the district court strongly chided Jenkins's counsel for presenting largely incomprehensible submissions on a variety of dispositive matters, which the district court asserted made its job a great deal more difficult.  Most troubling from the district court's perspective was Jenkins's counsel's response to Ball Corporation's motion for summary judgment, which the district court described as "blunderbuss."  Rather than take a cue from the district court, Jenkins's counsel has again submitted briefing to this panel, which to be kind, does not present a model of legal clarity.  Nevertheless, we believe that regardless of the difficulties we have encountered in our consideration of Jenkins's averments, we are content that the factual record is comprehensive enough to allow this panel to make an appropriate determination as to the issues raised in this appeal.

5

S.Ct. 2555, 91 L.Ed.2d 265 (1986). When this court reviews a district court's grant of summary judgment, we review the decision *de novo* and apply the same standard as the district court did. Arbaugh v. Y&H Corporation, 380 F.3d 219, 222 (5th Cir. 2004).

> A. Did the district court commit reversible error by striking evidence Jenkins sought to have admitted?

Jenkins contends that the district court erred when it granted Ball Corporation's motion to strike evidence. The motion was granted in large measure because the district court found that the evidentiary matters that Jenkins sought to have admitted into the record were inappropriate for the court's consideration as the matters sought to be admitted had not been authenticated, were not relevant to the underlying litigation, and apparently included proffers made by certain individuals based on information not within those individuals' personal knowledge.

We will review a district court's motion to grant or deny a motion to strike evidence for an abuse of discretion. See Sierra Club, Lone Star Chap. v Cedar Point Oil, 73 F.3d 546, 569 (5th Cir. 1996) (citing Scott v. Monsanto Co., 868 F.2d 786, 789 (5th Cir. 1989)); see also United States v. Gremillion, 464 F.2d 901, 908 (5th Cir. 1972). Consequently, because rarely will a reviewing court find that a district court's decision either way would constitute reversible error absent highly unusual circumstances, Jenkins faces a difficult burden. See Sierra Club, Lone Star Chap., 73 F.3d at 569.

On appeal, Jenkins discusses *seriatim* the evidentiary matters that she believes the district court erroneously prevented her from admitting into the record. We have reviewed Jenkins's contentions, but we find them to be unavailing. For example, Jenkins claims that the selection process for the CPM position was far more subjective than Ball Corporation would suggest. In this regard, Jenkins states that she sought to present documents that would show that the interview process was

6

discriminatory because the interviewers conferred with each other following each interview to arrive at a unified score for the respective interviewees. She believes that had this information remained in the record, a fact-finder could have potentially found that Ball Corporation's hiring process for the CPM position was simply a well-formulated means to engage in intentional discrimination. She also sought to include affidavits from individuals who would assert that Ball Corporation's hiring selection criteria lacked merit.

As noted, we will afford the district court a great deal of discretion regarding its decision to grant Ball Corporation's motion to strike. Moreover, no persuasive demonstration has been made by Jenkins that the district court's evidentiary ruling prohibited Jenkins from proffering evidence to rebut Ball Corporation's motion for summary judgment – and Jenkins contentions to the contrary are unavailing. Therefore, we find that the district court's ruling did not constitute reversible error, and we affirm.

B. Did the district court err in granting Ball Corporation's Motion for Summary Judgment?

1. Title VII Claim

Jenkins asserts that the district court erroneously granted Ball Corporation's motion for summary judgment. She notes that the district court made a series of errors in its analysis of the evidence. First, Jenkins avers that she had in fact established her *prima facie* case. Moreover, she believes that she was imminently more qualified for the CPM position than was Aaron Tan. She notes that many of her responsibilities as a CPO overlapped with the duties of a CPM. She also believes that the interview process was simply a ruse to engage in discriminatory hiring because, for example, the questions contained therein had not been certified pursuant to her union and Ball Corporation's

7

collective bargaining agreement. Moreover, she argues that the district court erroneously found that Tan had completed the TTP which, to recall, was offered by the company to allow its employees to enhance their technical knowledge. She observes that the TTP was never intended to have a dispositive effect in the context of company hiring decisions. Further, she argues that the totality of evidence that she presented to the district court strongly militated against granting Ball Corporation's summary judgment motion. She asserts that not only had she provided sufficient evidence to establish her *prima facie* case, but that her contentions were sufficient to demonstrate that a genuine issue of material fact was in dispute.

The basis for determining a party's entitlement to summary judgment in the context of a failure-to-promote claim brought pursuant to Title VII is sufficiently well-understood from the seminal case, McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). Under the burden-shifting framework articulated in McDonnell Douglas and its progeny, Jenkins must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position for which she applied; (3) she was not hired for the position that she sought; and (4) the employer persisted in interviewing and hiring applicants with qualifications comparable to those possessed by Jenkins. See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004). Thereafter, if the district court deemed that Jenkins had established her *prima facie* case, an inference that Ball Corporation engaged in discrimination would be presumed, and the company would be required to proffer a legitimate, nondiscriminatory reason for its failure to hire Jenkins for the CPM position. Id. If Ball Corporation's response provided a reasonable justification for its hiring decision, the presumption of discrimination stemming from the establishment of Jenkins' *prima facie* case would dissipate, and, in order to survive Ball Corporation's motion for summary judgment, she would be required to

8

present evidence indicating that the reasons articulated for the company's failure to hire her were ostensibly a pretext for racial discrimination. Id.

The parties dispute whether Jenkins actually met her initial burden by establishing a *prima facie* case of intentional discrimination. It is undisputed that as an African-American female, Jenkins is a member of a protected class within the understanding of Title VII. It also clear that she was not hired for the CPM position. Moreover, we will assume simply for the purposes of assessing whether Jenkins established her *prima facie* case, that her qualifications were comparable to those of Aaron Tan – the individual whom she argues that she was more qualified than, and who received the CPM position she sought. As such, the principal question concerns whether Jenkins was actually qualified to be a CPM. Ball Corporation avers that she did not have the requisite background for the position, and references, *inter alia*, certain responses she offered during the course of her interview. For example, in response to several questions related to certain technical procedures related to her potential responsibilities as a CPM, she was unable to provide an answer. Moreover, Ball Corporation notes, and it is not seriously disputed by Jenkins, that her interview score was the lowest of those individuals who had sought the CPM position.[4]

Nevertheless, Jenkins counters by arguing that she had sufficient experience to be appointed to the CPM position, given her years of experience with the company. She further notes that irrespective of the fact that she failed to answer some questions during the course of her interview, her duties as a CPO sufficiently overlapped with the responsibilities that would be required of her had

---

[4] While Jenkins does not dispute that she got the lowest interview score amongst the interviewees, she suggests that the questions she was asked had not been sanctioned under her union's collective bargaining agreement.

she been selected to be a CPM. Moreover, she argues in conclusory fashion that she had similar or better qualifications that Aaron Tan.

So as to simplify our analysis, we will again assume *arguendo* that Jenkins has met her requisite burden for establishing her *prima facie* case. We do so for several reasons, but principal amongst them is that, as we shall shortly explain, Jenkins has not produced anything that would suggest -- given this factual record -- that a genuine issue of material fact is in dispute.

Ball Corporation offered manifold reasons for failing to hire Jenkins. The company found that she did not possess that requisite mechanical background necessary for the CPM position. Also of note, Tan apparently participated in the TTP (and Jenkins did not), which was designed to bolster internal applicants mechanical and technical background. Moreover, as referenced above, she received the lowest interview score of all of the applicants. The rationales offered are sufficient to rebut the presumption of discrimination that arose following Jenkins's establishment of her *prima facie* case.

Consequently, because Ball Corporation proffered a host of legitimate nondiscriminatory reasons for its failure to hire Jenkins, in order to defeat the company's motion for summary judgment, she in turn was required to present evidence suggesting that the company's reasons were merely a pretext for discrimination. Jenkins avers that the reasons offered by Ball Corporation were pretextual. She notes that her lack of participation in the TTP could not possibly act as a barrier from being promoted because she could not recall an individual ever being denied a promotion to a position requiring technical skill within the company because they had not participated in the TTP. Additionally, she states that any individual who would have been hired for the CPM position would have required additional training, thus any assertion that Ball Corporation would have been required

10

to provide such additional training solely as it would pertain to her, but not as to Aaron Tan, misstates the true facts. She also believes that her seniority with Ball Corporation, as compared to Tan's, should have been taken into greater consideration when the determination was made as to whom would be hired for the CPM position.

Jenkins' arguments are well-taken, but they nonetheless do not support her contention that she is entitled to bring this matter to trial. Her contention is that she had superior credentials to Tan, and Ball Corporation's decision to the contrary was in effect discriminatory. As such, in order to resolve this matter as Jenkins would prefer, we are essentially being called upon to revisit Ball Corporation's determination that Tan's superior qualifications led to his hiring.

In the context of making a showing of pretext, we have noted that an appealing party faces a very high burden to establish that he or she is clearly more qualified than the individual who actually received the desired position. See Celestine v. Petroleos de Venezuella, 266 F.3d 343, 357 (5th Cir. 2001). Similarly, it is simply beyond the ken of the judiciary to determine which of two applicants was the most qualified for a particular position -- versus the opinion of the employer whose responsibility it is hire such applicants -- especially when neither of the applicants' credentials are overwhelmingly and uncontrovertibly superior to the other. See, e.g., Deines v. Texas Dept. of Protective and Regulatory Serv., 164 F.3d 277, 280-281 (5th Cir. 1999); see also Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993) (noting that pretext may be shown only when applicant not hired for particular position had credentials so outstanding as to "leap from the record and cry out to all who would listen that [s]he was vastly -- or even clearly -- more qualified for the subject [position]"). Further, we have also observed that a reviewing court must not replace its own judgment for that of "the employer in evaluating what types of experience are most valuable for an employee in the

11

absence of proof that the standards were not consistently applied or were so irrational or idiosyncratic as to suggest a cover-up." EEOC v. La. Office of Comm'n Serv., 47 F.3d 1438, 1445 (5th Cir. 1995).

We have reviewed the record closely, and hold that there has simply been no evidence presented, aside from Jenkins's conclusory allegations, that she was discriminated against by Ball Corporation in its hiring process for the CPM position, or that its reasons offered in support of its refusal to hire her were specious. There is nothing in the record that unequivocally demonstrates that Jenkins's credentials are clearly superior to Tan's. Therefore we refuse to assume the capacity of a *de facto* hiring agency, and thereby substitute our judgment for that of Ball Corporation, particularly when the distinguishing characteristics between two applicants -- giving Jenkins the great benefit of the doubt -- is negligible.[5]

Additionally, we find unavailing her assertion that because she had a much longer tenure with Ball Corporation, *ipso facto*, she was entitled to the promotion. See Price v. Federal Express Co., 283 F.3d 715, 723 (5th Cir. 2002) (noting that the aggrieved applicant's "better education, work experience, and longer tenure with the company d[id] not establish that he [was] clearly better qualified"). Accordingly, we find that the district court correctly held that Jenkins did not establish that the reasons asserted by Ball Corporation for refusing to promote her to the position of CPM were merely a pretext for discrimination. Therefore, we find that the grant of summary judgment in favor of Ball Corporation must be affirmed.

---

[5] Nothing in this opinion however should be read to suggest that we are countenancing purely subjective hiring determinations. Though we have expressed concern that an employer not use completely subjective criteria in its hiring decisions, Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 681 (5th Cir. 2001), the fact the aspects of the employer's hiring system may have subjective components will not provide the basis for a showing of pretext. See Manning v. Chevron Chemical Co., LLC, 332 F.3d 874, 882 (5th Cir. 2003).

2. ADEA Claims

Jenkins also avers that the district court erroneously granted Ball Corporation's motion for summary judgment as to her claims brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Jenkins contends that she was not hired due to age bias, given that Tan was hired over her, and that he was some three decades younger than she. In order for Jenkins to establish a *prima facie* case for age discrimination, she was required to demonstrate that: (1) she was not hired for the CPM position; (2) she possessed the requisite qualifications for the CPM position; (3) she was over the age of forty when she applied for the position; and (4) the individual who was hired for the position -- Aaron Tan -- was not a member of the protected class. See Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005).

To rebut the inference of discrimination that would exist upon the establishment of Jenkins' *prima facie* case, Ball Corporation was required to proffer a legitimate nondiscriminatory reason for its failure to hire Jenkins for the CPM position. Id. As referenced above, the reasons asserted as to why Jenkins was not offered the position were plentiful. For example, she received the lowest interview score among the interviewees. Also, according to Ball Corporation, she did not have the same mechanical background as the two individuals who were selected. These reasons offered are sufficient to rebut Jenkins' *prima facie* case, assuming she had established it in the first instance.[6]

Therefore, Jenkins was required either to show that Ball Corporation's asserted reasons for not promoting her to the CPM position were untrue, or, to present evidence demonstrating that the motivating reason as to why she was not hired was her age. Id. Because Jenkins has not made either

---

[6] We note questions persist as to whether Jenkins was qualified for the CPM position. We simply assume that she was in order to reach our ultimate result.

13

showing, her claim asserting that she was the victim of age discrimination faces the same infirmity as her racial discrimination claim: she has not shown pretext.  Consequently, her ADEA claim must fail.

## CONCLUSION

For the foregoing reasons we find that the district court's grant of Ball Corporation's motion for summary judgment was appropriate.  Consequently, we affirm.

AFFIRMED.