**Harry SALTZMAN, on behalf of himself and all other stockholders of Technicolor, Inc., Plaintiff,**

**v.**

**TECHNICOLOR, INC. et al., Defendants.**

**No. 70 Civ. 1745.**

United States District Court,
S. D. New York.

Oct. 8, 1970.

Graubard Moskovitz McGoldrick Dannett & Horowitz, New York City, for plaintiff; Emanuel Dannett, Edward M. Rosenfeld, New York City, of counsel.

Fulton, Walter & Duncombe, Pomerantz, Levy, Haudek & Block, New York City, for Technicolor, Inc. and certain other defendants; George Rowe, Jr., Abraham L. Pomerantz, Robert B. Block, New York City, of counsel.

Sager & Burns, Hilery F. Silverman, Miami, Fla., for objectant H. Denny Schweiger.

George H. Beuchert, Jr., William Joseph H. Smith, Washington, D. C., for defendant Byron Roudabush.

Philip J. Ryan, Springfield, Mass., for defendants William R. Frye, Louis Antos and Mrs. Louis Antos.

David A. Ettinger, pro se.

## OPINION

LASKER, District Judge.

This is an application pursuant to Rules 23 and 23.1 of the Federal Rules of Civil Procedure for approval of the proposed dismissal with prejudice of a derivative stockholders' suit denominated by plaintiff (although not heretofore formally determined by the court) to be a class action.[1] Pursuant to order of the court dated June 26, 1970, a hearing was held July 23, 1970, at which counsel for the plaintiff and for defendants Technicolor, Inc., Edward E. Ettinger, Patrick J. Frawley, Jr., Paul W. Fassnacht and Willard B. Gorsuch, as well as two stockholder objectants, were heard. The objectants thereafter submitted their objections and a memorandum in support; plaintiff's and defendants' counsel have submitted affidavits and memoranda in opposition to the objections.

Plaintiff Saltzman is and was at the time of the commencement of the suit a substantial shareholder of Technicolor, Inc., a Delaware corporation. The defendants other than Technicolor consist of its prior directors and officers, as well as other persons, in particular Byron Roudabush, William R. Frye and Louis Antos, who are accused of having conspired with the directors and officers of Technicolor to sell to Technicolor their respective businesses (Byron Motion Pictures, Inc. and Standard Photo Service, Inc.) for Technicolor stock on the condition that they would vote that stock for the existing "Frawley management."

This suit, filed April 29, 1970, alleges that the directors of Technicolor, after postponing the holding of the scheduled annual stockholders' meeting, on March 13, 1970 caused Technicolor to enter into an agreement by which, in exchange for the votes of Roudabush, Frye and Antos, it purchased from Roudabush the entire ownership of Byron for 425,000 shares of the common stock of Technicolor and in mid-April acquired from Frye and Antos all of Standard's stock for 205,000 shares of Technicolor common stock and a substantial cash payment. It is further claimed that in mid-April the Frawley management caused Technicolor to enter into consultant agreements with O. Dale Wright ("Wright") and Philip Koller ("Koller") for unspecified "advisory and consultative services" to be rendered "on a time available basis and to an extent not in conflict with * * * [their] primary obligations to" any other concern, on the condition

---

1. Although no formal determination in accordance with Rule 23 has heretofore been made that the case is properly brought as a class action, this procedural deficiency does not constitute an impediment to a ruling on the instant motion. It is clear, on the face of the papers and from examination of the trial transcript, that the case was properly brought as a class action, and none of the parties nor the objectants dispute the matter. Had a formal determination been made that the case was properly brought as a class action, members of the class would have been entitled to the notice provided by Rule 23. The notice sent to all members of the class which actually notified them of the hearing to be held on this motion to dismiss with prejudice and of the opportunity to be heard adequately protected the rights of the class members under the special circumstances of this case.

that Wright and Koller, who between them owned approximately 100,000 shares of Technicolor, would also vote their stock to management.

The complaint includes causes of action charging (1) violations of Sections 4 and 16 of the Clayton Act (both Technicolor on the one hand and Byron and Standard on the other being involved in the business of developing, processing and printing of photographic film); (2) violations of the Securities Exchange Act of 1934 ("the Act") by concealing material information from the stockholders as to the Byron and Standard transactions; and failing to comply with the Blue Sky provisions of the California Corporate Securities Laws; (3) breach of the common law fiduciary obligations of the management by concealing information designed to prevent Saltzman from waging an effective proxy campaign; (4) further breach of common law fiduciary obligations by the purchase of Byron and Standard for the purpose of perpetuating management's control of Technicolor; and (5) waste of assets by entering into the consultant agreements with Wright and Koller.

The complaint demanded, as relief, rescission of the Byron and Standard agreements, an accounting, compensation for losses suffered by Technicolor, treble damages under the Antitrust Law, a declaration that the adjournment of the stockholders' meeting was a nullity and setting of a new date, an injunction against the issuance of further stock and the recognition of proxies from former shareholders of Byron or Standard or from Wright or Koller, and an injunction ordering Technicolor to offer to repurchase its stock in accordance with provisions of the California Corporations Code.

The answers of all the defendants contain general denials. Technicolor stated as an affirmative defense violations of the 1934 Act by plaintiff Saltzman and his associates and asserted a counterclaim for an injunction to prevent Saltzman and his associates from voting their stock.

Roudabush asserted that the complaint failed to state a claim, that the court lacks jurisdiction of the defendants, and that venue is improper as to him.

Frye and Antos allege a lack of jurisdiction over the subject matter and the person, improper venue, inadequate process and service of process, and failure to state a claim.

From the outset it must be understood, and it is not disputed, that this action was brought as part of Saltzman's strategy in the contest for the control of Technicolor; that the complaint was framed under pressure caused, perhaps unavoidably, by the limitations of time, but resulting in blanket accusations which, not surprisingly, were shown to have little or no merit upon the exhaustion of discovery and after trial.

A motion by plaintiff for a preliminary injunction was heard on May 5th by Judge Frankel, who reached a tentative decision that it was without merit and suggested an early trial to take place upon completion of discovery. Accordingly, within a matter of two weeks thereafter, plaintiff's counsel took the depositions of 16 witnesses, totaling in excess of 1000 pages, and reviewed several thousand pages of exhibits which were introduced at trial. Defense counsel deposed plaintiff.

The case was tried before Judge Frankel on May 21, 22 and 25. Almost immediately after the commencement of trial plaintiff's counsel advised the court that it had not been possible to investigate the antitrust cause of action, and as a consequence he moved to sever those claims. Judge Frankel granted the severance (Trial Tr. pp. 10–11).[2]

---

2. At the hearing before me on July 23, 1970, plaintiff's counsel candidly admitted:

"* * * We had another claim which was a violation of the antitrust laws. With respect to that claim we

At the conclusion of the three-day trial, at which all depositions taken on discovery had been put in evidence and all exhibits identified, the following colloquy occurred (Tr. p. 72):

"THE COURT: * * * Do you concede that the consideration for the issuance of the Technicolor stock [3] — leaving aside for the moment this ulterior purpose [4] —was adequate?

"MR. DANNETT (plaintiff's counsel): We are saying we have no evidence before you which will show it was inadequate.

"THE COURT: No claim that it was inadequate?

"MR. DANNETT: We have no evidence to support such a claim.

"THE COURT: In the absence of support of the claim, what is the law? What is the claim?

"MR. DANNETT: In the absence of any proof on my part you will have to assume that it was adequate; yes, sir."

The above colloquy took place with regard to the Byron transaction. As to Standard, plaintiff's counsel stated:

"Everything that I have said with respect to Byron applies to Standard with one exception."

that exception being the view that it had involved a violation of the California Corporations Code.

In other words, at trial's end counsel for plaintiff withdrew the demands for damages against all the defendants and for rescission of all transactions, and maintained only the prayer for an injunction against the voting of the Roudabush, Frye and Antos shares. Even

this final remaining cause of action was later abandoned because, after the conclusion of the trial, Roudabush announced that he would vote his shares for the Saltzman group, thereby seriously impairing plaintiff's claim that defendants had issued Technicolor stock to Roudabush (and Frye and Antos) for the purpose of perpetuating their control of Technicolor. Informed of this situation, Judge Frankel commented (Post-Trial Hearing Tr. p. 11):

" * * * some of the steam has gone out of it [plaintiff's case] when I see that a witness who very explicitly said, of course, he is going to vote with Frawley has now switched to the other camp and I have in mind that nobody has ever claimed that there was an enforceable agreement for these people who sold their businesses to vote with Frawley, et al., and of course nobody would claim that any such agreement would be valid in any event, but having all that in mind and seeing that this is a situation where the standard opportunities for persuasion are not absent, where the standard situation in a standard proxy fight is not so far from being in the picture, I wonder why a busy Federal Court in this posture should be called upon to work through all the subtleties of this case starting out as to whether we even have jurisdiction over Frye and Antos."

Moved by Judge Frankel's suggestion that the remaining issues be settled, plaintiff relinquished his demand that Roudabush, Frye and Antos be restrained from voting, and the parties on June 11, 1970, entered into a stipulation

stated in open court that we had been unable to complete our trial preparation. We asked that that issue be severed from the case. All counsel agreed, and Judge Frankel also approved, although no formal order was entered severing the antitrust claim." (Tr. p. 16)

3. Issued in connection with the Byron and Standard transactions.

4. That is, the consummation of the transaction on the alleged condition that Roudabush, Frye and Antos would vote their stock for the then existing management.

which was so ordered by the court, and which provided in relevant part:

"FIRST: So much of the amended complaint as alleges that the 425,000 shares of common stock of Technicolor, Inc. issued to Byron Roudabush on March 13, 1970 and the 205,000 shares of Technicolor, Inc. issued to William R. Frye, Katherine Frye, Louis Antos and Mrs. Louis Antos on April 15, 1970 are not entitled to be voted at the annual meeting of shareholders of Technicolor, Inc., to be held during the calendar year 1970, and which seeks an order and decree of this court enjoining the voting of the aforesaid shares and the counting thereof at any annual meeting of the company, be and it hereby is, with the agreement of the parties, discontinued with prejudice as between plaintiff and defendants."

It will thus be observed that all claims except those alleging violation of the antitrust laws, which had been severed, had been abandoned or discontinued with prejudice by June 11, 1970.

Under ordinary circumstances, the history of the litigation would have ended here, but it did not. The lawsuit, it is true, had terminated except for the dismissal requested in this application. It was obvious, however, that as the result of Roudabush's change of heart as to how he would cast his vote, plaintiff's slate of directors would be elected to replace the Frawley board. This was the background for an agreement entered into on June 17, 1970, between Frawley and his associates on the one hand and Technicolor on the other (but not the plaintiff or other defendants) which provided that the Frawley group would sell to Technicolor 557,162 shares of common stock of Technicolor and would receive in exchange 76,346 shares of the common stock of Warner-Lambert Pharmaceutical Company, 50,084 shares of the common stock of Frawley Enterprises, Inc., and $129,287.98 in cash, representing the difference between the market value of the Technicolor stock and the stock received in exchange for it. The agreement contained the following conditions subsequent:

"(4) * * * that (a) by September 30, 1970, at the annual meeting of the Technicolor stockholders to be held on July 8, 1970, or at any adjournment thereof or at any special meeting held in lieu thereof, this Agreement and the performance by Technicolor of its obligations hereunder shall have been approved by stockholders of Technicolor having at least a majority of the shares represented at such meeting at which a quorum is present; and (b) the action entitled Saltzman vs. Technicolor, Inc., 70 Civ. 1745, S.D.N.Y., shall have been dismissed by September 30, 1970, after due notice to stockholders."

At the stockholders' meeting held July 8, 1970, the agreement was overwhelmingly approved.[5]

Apparently believing that the condition subsequent calling for dismissal with prejudice by this court of the instant litigation puts before the court the propriety of the agreement itself and endows the court with jurisdiction to determine that propriety, the objectants pose objections both to dismissal of the suit and to what they describe as the "settlement of June 17, 1970." I find neither a need nor a jurisdictional basis for a determination by the court of the propriety of the agreement. Indeed, the order of this court dated June 26, 1970, on the basis of which a hearing was held July 23, 1970, and at which hearing the objections to be discussed below were made, provides only that the subject of the hearing would be "as to the fairness and reasonableness of a proposal to dismiss the within action including the

5. The vote for the agreement was 3,043,786 shares against 53,905 shares. Of 2,933,435 independent shares entitled to vote at the meeting 1,861,496 shares were actually voted in favor of ratification and 53,905 against.

counterclaim alleged in this action and approving the payment by Technicolor, Inc. of counsel fees and expenses of plaintiff in this action" and made no mention of the agreement of June 17th or of any proposal that its fairness would be determined by the court. I turn, therefore, to the propriety of dismissing the case.

■ This case is one of a category becoming all too common as the application of Rule 23 comes into full flower, in which the individual plaintiff, having obtained his private objectives, seeks approval for the dismissal of a derivative suit which he designated as a class action. There can be no question, of course, that if the result of the litigation to date were *merely* to have accomplished the *objectives of the individual* plaintiff, but not to have tested adequately the merits of the claims of the class, dismissal could not be approved. As Judge Fullam wisely observed in Philadelphia Electric Co. v. Anaconda American Brass Co., 42 F.R.D. 324 (E.D.Pa.1967), at 328:

" * * * no litigant should be permitted to enhance his own bargaining power by merely alleging that he is acting for a class of litigants. Under the present Rule 23, an allegation of class representation is attended by serious consequences."

Clearly in this case no claim or objective of the class has been satisfied (unless one assumes that the class has an interest in exchanging Frawley for Saltzman, an objective which it can be considered the class might have attained without the attritional cost of litigation). It becomes necessary, therefore, to determine the merits of the class claims and the possibility of plaintiff success in the litigation. Winkelman v. General Motors Corp., 48 F.Supp. 490, 493 (S.D.N.Y.1942):

" 'The role of the court is to see that the compromise is fair and reasonable under the circumstances and that no collusion or fraud has been practiced

in the consummation of the settlement. To do this the court must weigh the probabilities and possibilities of victory or defeat as indicated by the legal or factual situation presented.' [Mr. Justice Rosenman in Neuberger &c. v. Barrett et al., June 25, 1942.]"

### I. *The Bryon and Standard Transactions*

■ A. *The Antitrust Claim*: The Byron and Standard transactions were attacked as being in violation of the Clayton Act. It will be recalled that at the hearing on the proposed dismissal counsel for plaintiff candidly admitted, as he had at the outset of the trial, that plaintiff's trial preparation on this claim had not been completed. That cause of action accordingly was severed by order of Judge Frankel. When a claim has been made on behalf of a class and, as the result of counsel's failure or inability to complete an investigation of the claim, the evidence before the court is inadequate to determine the viability of the claim, the cause of action upon which it is based may not be dismissed with prejudice. Such a dismissal, binding on the class, would deprive it of its rights to secure the recovery it may be entitled to, if any. Counsel for plaintiff and defendants nevertheless urge that it is proper to dismiss the cause of action with prejudice. They argue, first, that there are substantial questions of law as to whether the antitrust laws can be enforced in a stockholders' derivative action, see, e. g., Gomberg v. Midvale Co., 157 F.Supp. 132 (E.D.Pa.1955); Geddes et al. v. Anaconda Copper Mining Co. et al., 254 U.S. 590, 41 S.Ct. 209, 65 L.Ed. 425 (1921); American Commercial Barge Line Co. v. Eastern Gas & Fuel Associates, 204 F.Supp. 451 (S.D.Ohio 1962); and, second, that, since the Department of Justice has been fully apprised of the Byron and Standard transactions, the Department should be entrusted with the determination of whether the transactions violate the law.

These contentions, however, miss the point. If there is indeed a legal impediment to the enforcement of the antitrust law through a stockholders' derivative suit, a matter on which I express no opinion, such a defense may be pleaded and easily determined; and the fact that the government may or may not wish to take action in the case may not stand as a bar to the exercise of private rights.

 It is nevertheless true that none of the parties or objectants has demonstrated any merit to the claim or the serious possibility that the plaintiff class would prevail at trial on this cause of action. Accordingly, although the antitrust claim may not be dismissed with prejudice, it will be dismissed without prejudice. This disposition will enable any stockholder, particularly the objectants, to revive the claim if it is believed to be meritorious. Should no such revival occur, the defendants are entitled to be free of the litigation.

B. *Other issues as to Byron and Standard*: The remaining allegations attacking the Byron and Standard transactions claim that the defendants had caused Technicolor to purchase the Byron and Standard assets for more than they were worth, had conditioned the sale on the agreement of Roudabush, Frye and Antos to vote for the Frawley management, and had concealed these facts from the stockholders. These claims were most thoroughly investigated by plaintiff's counsel in the course of the numerous depositions taken. I am satisfied that the discovery as to these elements was adequate and complete, and that plaintiff's counsel properly concluded that the proof would not establish (1) that the consideration received by Technicolor in exchange for the shares issued in those transactions had been unfair to the corporation,[6] or (2) that the transactions involved any agreement on the part of Roudabush, Frye or Antos to vote for the Frawley management. Indeed, Roudabush's actual later vote for the Saltzman group belies the contention; and the actual replacement, since termination of the trial, of the Frawley management renders the second issue moot. Accordingly the causes of action, other than those based on the antitrust laws, attacking the Byron and Standard transactions are dismissed with prejudice.

II. *The Wright and Koller Agreements*

The arrangements with Wright and Koller for consultation by them with Technicolor were also assailed on the ground that they were consummated for the purpose of inducing Wright and Koller to vote for the Frawley management. These claims ought also to be dismissed with prejudice, since the record establishes (Trial Tr. pp. 412–416) that, although the compensation to be paid to Wright and Koller was surprisingly high in relation to the services to be rendered, nevertheless the services were important to the company. Wright and Koller possessed a significant degree of expertise, and their services

6. As to the Standard sale, see plaintiff's Exhibit 31 (the Gorsuch memorandum). The analysis contained in the memorandum shows that at the time of the transaction Technicolor stock sold at 17 times after-tax earnings, or 8 times pre-tax earnings. The valuation of Standard was such as to equal 240,000 Technicolor shares at market value in addition to the cash payment actually made. In fact, only 205,000 shares plus cash were "paid" for Standard. Nor did the purchase of Standard adversely affect Technicolor's earnings per share.

As to the Byron transaction, see plaintiff's Exhibit 3A (pages 4 and 5 of memorandum attached to minutes of the Board meeting of March 13, 1970). The figures there show that in March 1970 Technicolor stock was selling at 19½ times after-tax earnings. This ratio, applied to Byron's earnings, justified the "payment" of 425,000 shares of Technicolor stock (without dilution of earnings, indeed with a slight increase).

In both cases Technicolor stock was valued at market.

were highly prized, but, most important, no proof exists of any agreement that they would vote their stock for Frawley. Finally, it appears that the agreements have heretofore been cancelled (Affidavit of Thomas L. Flattery sworn to August 26, 1970, p. 6), rendering the question of their culpability moot, at least from the date of cancellation.

### III. *Attorney's Fees*

 Plaintiff's counsel requests approval of payment to him by the corporation of attorney's fees in the amount of $11,500 and reimbursement of expenses. The sum of $11,500 is stated to constitute 10 percent of his charges in the litigation. On this important point the affidavit of plaintiff's counsel asserts only that "it is our best estimate that not more than 10 per cent of our total time was devoted to the derivative and class claims." There can be no doubt that counsel expended very substantial time, energy and expertise in the prosecution of this suit. The total amount charged appears to be reasonable in relation to the complexity of the subject matter, the importance of the case, and the high standing and competence of counsel. Nevertheless, I conclude that the application for attorney's fees and reimbursement of expense should be disallowed. The proof as to what portion of counsel's efforts were actually expended on derivative and class claims as distinct from claims of his individual client is, perhaps unavoidably, weak, and is wholly conclusory. But even if this were not so, attorney's fees ought not be a charge here against the corporation or its stockholders because the corporation itself has derived no clear benefit from the litigation. This conclusion in no way impugns the good faith of counsel in presenting the application to the court.

### IV. *Objections to the Motion to Dismiss*

H. Denny Schweiger has filed objections to the dismissal and award of attorney's fees on grounds specified in 11 lettered paragraphs, replete with subparagraphs, the substance of which is reducible to the argument (a) that the court has insufficient information before it upon which to determine the "bona fides" of the allegations or the "bona fides" of the defenses, and (b) that the case was brought solely for Saltzman's individual purposes and has produced no benefit to the corporation. Schweiger also objects, on numerous grounds, to what he describes as "the settlement of June 17, 1970," that is, the agreement of that date referred to above.

David A. Ettinger, attorney stockholder acting pro se, filed objections which fall within the Schweiger contentions. I turn my attention to their claims.[7]

██ A. *The Posture of the Case*: Except with relation to the causes of action alleging violations of the antitrust laws, I find altogether unpersuasive objectants' contentions that the case has not been adequately investigated or that it is not in a posture for decision by the court. As indicated earlier, plaintiff's counsel deposed 16 important witnesses whose testimony aggregated over 1000 pages. He examined hundreds of documents; he conducted a three-day trial the record of which exceeds 500 pages. It was on the basis of this very substantial investigation of the facts and merits of the case that he represented in open court, both to the trial judge and to the judge at the hearing on this application, that the causes of action in his present opinion were not meritorious and that the plaintiff stockholders would not prevail thereon if forced to trial. The de-

---

7. Although the documents submitted by the objectants do not specify either that they are shareholders or the number of the shares they hold, the memorandum of counsel for defendants states that ob-jectants own "a total of 900 shares" (of more than 4,000.000 shares issued and outstanding), and these figures do not appear to be in dispute.

fense counsel made similarly unconditional representations. I am, of course, mindful that no derivative or class action may be dismissed if based upon a collusive arrangement. However, nothing in the record here suggests the existence of any collusion. It is true that Saltzman gained what he sought, and he alone gained a benefit; but this does not negate the fact that in the course of the litigation, brought in good faith at the outset, counsel became convinced that the claims originally made were unprovable and unmeritorious.

The observation of Chief Judge Ryan in Glicken v. Bradford, 35 F.R.D. 144, 151 (S.D.N.Y.1964), that "the role of the court is limited to the extent that its business judgment is not to be substituted for that of parties who worked out the settlement and * * * the only question before us is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval," though referring to a proposed compromise settlement, appears applicable to a motion to dismiss on the merits. As Judge Wyatt put it in Josephson v. Campbell, CCH Fed.Sec.L.Rep. ¶ 92,347 at p. 97,658 (S.D.N.Y., Jan. 24, 1969):

> "There is a strong initial presumption that the compromise is fair and reasonable. This rests on a number of factors. Counsel for plaintiffs is able and experienced, particularly in the specific area with which these actions are concerned. His judgment is entitled to great weight * * *."

▮ Most of the settlements presented to this court for approval, and approved, have not even reached the stage of trial. Surely the court has more before it for decision after the conclusion of a trial which has aired the issues, even if they have been abandoned, than it does in the normal case which is un-

tried. Further expense should not be demanded of the corporation or of the parties to pursue to a futile conclusion a case the issues of which the objectants themselves assert related solely to a contest for control.

B. *Benefit to the Corporation*: I have observed above that the corporation appears to have benefited little, if at all, from the litigation, but standing by itself such a factor is inadequate to require the continuance of the litigation. The question is not whether the corporation has received benefit from the litigation, but whether, on the basis of the record, it is reasonable to believe that the corporation could be expected to receive any benefit if the litigation were pursued. The record here establishes that there is no such expectation.

C. *The June 17 Agreement*: Although a substantial portion of the objectants' papers is devoted to alleged improprieties and inequities of the June 17th agreement, this matter, as explained above, is not before the court. The order of June 26, 1970 noticed a hearing to be held solely with regard to dismissal of the action, and it would be improper for the court to rule on the merits of the agreement if indeed it has jurisdiction to do so. If the agreement is vulnerable as infringing the rights of the corporation or its stockholders, a matter on which I express no opinion, nothing contained in this opinion will prevent the corporation or its stockholders from pursuing their remedies.

For the reasons stated above, the instant case is dismissed with prejudice except as to those claims arising under the antitrust laws, which are dismissed without prejudice. The application for attorney's fees and reimbursement of expenses is denied.

Submit order.