**Stanley SVED, Plaintiff,**

v.

**Michael S. CHADWICK,
et al., Defendants.**

Civil Action No. 3:06–CV–1135–N.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 23, 2009.

Order Denying Reconsideration
March 26, 2010.

Michael S. Chadwick, Houston, TX, pro se.

Frank J. Fradella, New Orleans, LA, pro se.

Willard W. Kimbrell, New Orleans, LA, pro se.

Charles P. McCusker, Jr., New Orleans, LA, pro se.

Patrick A. McGeeney, Dallas, TX, pro se.

Brian Marshall, Tampa Bay, FL, pro se.

Michael J. McGrath, Roseland, NJ, pro se.

Edward P. Perrin, Jr., James N. Henry, Jr., Hallett & Perrin, Bruce W. Collins, Emily Coleman McCall, Carrington Coleman Sloman & Blumenthal, Dallas, TX, for Defendants.

## *ORDER*

DAVID C. GODBEY, District Judge.

This Order addresses final approval of the parties' proposed derivative settlement. The Court faces two issues: (1) whether it may grant final approval to the settlement agreement despite Derivative Plaintiff Stanley Sved ("Sved")'s withdrawal of consent; and, if so, (2) whether final approval is appropriate. Because the Court finds that it may grant final approval over Sved's objection and that the settlement agreement at issue is fair, reasonable, and adequate, it grants final approval

and incorporates the terms of the settlement agreement into this Order.

## I. THE ORIGINS OF THE PARTIES' DISPUTE

This derivative shareholder action arises out of alleged false and misleading statements and omissions by members of the Home Solutions board of directors (collectively, the "Individual Defendants") regarding the company's business practices, internal controls and financial results. Sved asserted six causes of action against the Individual Defendants: (1) breach of fiduciary duty; (2) abuse of control; (3) gross mismanagement; (4) waste of corporate assets; (5) unjust enrichment; and (6) insider selling.

### A. The Settlement Agreement

The factual allegations in the complaint are substantially similar to the allegations in related securities class actions before this Court, consolidated under the caption *Hansen v. Fradella et al.,* Civil Action No. 3:06–cv–1096.[1] After filing numerous motions with this Court, the parties settled this case alongside *Hansen* in a hard-fought and extensive mediation. The two settlement agreements provide shareholders with different forms of relief. The *Hansen* settlement offers class members $3.5 million, less taxes, fees, and expenses. The derivative settlement agreement at issue in this case (the "derivative settlement"), which has the full support of the Home Solutions board of directors, requires the company to adopt a number of corporate governance measures. They are:

1. Home Solutions will separate the positions of Chairman of the Board and Chief Executive Officer, which shall remain separated for a period of at least four years following the date of the stipulation;

2. The appointment by Home Solutions of an independent and disinterested Chairman of the Board, Michael McGrath, whom Plaintiff acknowledges is independent and disinterested;

3. The appointment by Home Solutions of a new interim Chief Financial Officer;

4. The resignation of Defendant Brian Marshall as an officer and director of Home Solutions;

5. The retention of an outside law firm, Haynes & Boone, to conduct an investigation and report their findings to Homes Solutions' Board of Directors;

6. The adoption by Home Solutions of enhanced procedures to ensure the accuracy of its press releases and public announcements;

7. Home Solutions shall not make strategic equity investments in any company in which a Director or Executive Director has direct ownership of more than 5 percent subject to Home Solutions' ability, through reasonable efforts, to determine ownership interests in any such company.

Stipulation of Settlement [54–1] at 3–4. The derivative settlement also allows for $250,000 in attorneys' fees and a $2,000 incentive payment to Sved.[2] *Id.* at 7–8. It provides that the "finality of the Settlement shall not be affected by the Court's determination regarding the approval of fees and expenses for Plaintiff's Counsel." *Id.* at 8.

---

1. Sved's counsel did not serve as class counsel in the *Hansen* matter.

2. The derivative settlement does not include Defendant Brian Marshall. Sved did not release his claims against Marshall, nor is Marshall bound by the agreement.

The parties sought and received this Court's preliminary approval of both settlement agreements contemporaneously. As required by the preliminary approval order, the parties sent written notice to all affected Home Solutions shareholders informing them of both agreements. The detailed notice explained the terms of the derivative settlement, the date and time of the fairness hearing, and the shareholders' right to appear. *See* Stipulation of Settlement [54–4]. The parties also maintained a web site and toll free "helpline" to further provide information and answer questions about the settlement. *Id.* The Court received no shareholder objections to the derivative settlement, either in writing or in person at the fairness hearing.

### B. Sved's Withdrawal of Consent to the Settlement

Five days before the final fairness hearing, Sved's counsel filed a notice to this Court purporting to unilaterally withdraw the derivative settlement because Home Solutions "may be unable to fulfill one or more of its obligations under the proposed derivative settlement." Derivative Pl.'s Notice of Withdrawal [59] at 1. At the fairness hearing, the parties disputed the company's ability to comply with first two of the above-listed corporate governance measures due to the resignation of Home Solutions' chairman of the board, Michael McGrath. It was apparent at the time of the fairness hearing that Home Solutions faced serious financial problems; its ability to pay the attorneys' fees and incentive payment, if approved, was unclear. Because of these issues, the Court continued the fairness hearing on the derivative settlement for about ninety days.[3]

The parties stood in essentially the same positions at the time of the second fairness hearing. They continued to debate the company's ability to comply with the derivative settlement due to resignations by some Home Solutions directors and officers. The Individual Defendants maintained that the company had implemented all of the required corporate governance measures regardless of the resignations, stating "no company can promise that any individual employee or director can serve in perpetuity, and the company never agreed to any such thing." Tr. of June 22, 2009 Fairness Hr'g at 5. Further, Home Solutions still faced financial difficulties. As a result, the Individual Defendants still could not guarantee on-time payment of the attorneys' fees or the incentive payment, if approved. Based on these issues, Sved requested that the Court deny final approval. The Individual Defendants, on the other hand, continued to support the agreement as fair, reasonable and adequate. The Court took the matter under advisement. Now the Court must evaluate the weight and impact of Sved's objection on the derivative settlement.

### II. Sved's Withdrawn Consent Does Not Bar Final Approval

The Court limits its inquiry to the very narrow question presented: whether a federal court can grant final approval of a derivative settlement where the derivative plaintiff withdraws his consent to the settlement after the court grants preliminary approval and the parties issue notice to shareholders. This issue is governed by federal procedural law. According to the Fifth Circuit:

> Whether a settlement agreement, thus tested under state law, has been accepted by a federal court and properly incorporated into a valid and enforceable

---

**3.** Sved did not object to final approval of the *Hansen* settlement. After considering whether it was fair, reasonable, and adequate, the Court granted the *Hansen* parties' request for final approval and entered an order incorporating the agreement.

judgment is purely a matter of federal procedure. Federal courts have the inherent power to enforce settlement agreements entered into by the parties litigant in a pending case, to determine compliance with procedural prerequisites, and to determine when, if ever, a party may repudiate a contractually binding settlement agreement.

*White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir.1986).

■ To be clear, this issue does not involve the contractual validity or post approval enforcement of the settlement, issues governed by substantive state law on contracts generally. "For example, challenges to a settlement agreement based on interpretation of an ambiguous term, capacity to contract, fraud, or indefiniteness of a term all turn on the applicable state law." *Id.; see also Khouw v. Methodist Hosp. of Dallas*, 126 Fed.Appx. 657, 659 (5th Cir.2005) (analyzing the validity of a settlement agreement using the interpretive canons of traditional state contract law); *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir.1992) (distinguishing the question of an agreement's validity from whether it can be incorporated into a final judgment). In the instant matter, the parties do not dispute the validity of the agreement and the plaintiffs do not seek its enforcement. Rather, Sved urges the Court not to grant final approval of the settlement. Thus, the Court must evaluate the federal procedural question of whether final approval of the settlement agreement is appropriate despite Sved's withdrawn consent.

■ Under federal procedural law in the Fifth Circuit, "[u]nless the [moving party] can demonstrate that the judgment differs materially from their agreement, or that their agreement was invalid under state law at the time it was made, a federal court may hold them to their word by

incorporating the terms of their agreement into a final judgment." *Kupcho*, 792 F.2d at 530. Thus, a federal court may incorporate a settlement agreement into a final judgment even if one party withdraws its consent before final approval. *Id.; see also Ledet v. Northland Ins. Co.*, No 07–CV–0683, 2009 WL 2338044 (W.D.La. Jul. 29, 2009) (enforcing a settlement agreement where judgment was entered despite an alleged lack of consent by the plaintiff); *Beckham v. Reed, Kapt. H. Krohn, G.M.B.H.*, 217 F.Supp. 749, 751 (S.D.Tex. 1963) ("It seems clear that . . . such agreements are binding at the time there is a meeting of the minds and subsequent repudiation is no bar to a judgment.").

In the context of a securities class action, the Eighth Circuit addressed a similar issue. It considered "what weight a district court must give to objections from a fraction of a fractured lead plaintiff group." *In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 751 (8th Cir.2003). In *BankAmerica*, three members of a seven member lead plaintiff group objected to a class settlement agreement. *Id.* at 749. After a full fairness review, the district court granted final approval over the plaintiffs' objections. *Id.* at 750. On appeal, the plaintiffs' did not contest the fairness and adequacy of the settlement, but rather the court's power to approve it despite their objections. *Id.* The Eighth Circuit affirmed, stating: "In light of [the court's fairness determinations] and the absence of guidance in the [Private Litigation Securities Reform Act], it was not an abuse of discretion for the district court to proceed under Rule 23 and approve the settlement over Appellants' objections." *Id.* at 752. *See also Koehler v. Brody*, 483 F.3d 590 (8th Cir.2007). Although not all of the lead plaintiffs in *BankAmerica* objected to the settlement, the case illustrates the district court's discretion in matters where it

is entrusted with the responsibility to guard the interests of absent shareholders. *See id.* at 752.

■■ This Court is not aware of any case that squarely addresses this issue in the context of a derivative suit. However, the argument in favor of final approval is perhaps more persuasive in this context. Settlements of shareholders' derivative suits "are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir.1983). Thus, courts "do not lightly reject such settlements." *Id.* Further, Fifth Circuit precedent directs the Court to consider not only the opinion of the derivative plaintiff, but also the preferences of the many other players involved. *See Zapata,* 714 F.2d at 455–56. In this case, all of the other interested parties appear to support the agreement. Not a single shareholder submitted an objection to the derivative settlement. The board of directors fully supports the agreement. Tr. of June 22, 2009 Fairness Hr'g at 9. This Court will not refuse its approval based on Sved's withdrawal of consent alone where the apparent preferences of all of the other relevant players favor approval.

For these reasons, the Court concludes that it may grant final approval of the derivative settlement over Sved's objection so long as it determines that Sved has derivative standing and that the settlement is fair, reasonable, and adequate. The Court considers these issues in turn.

### III. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

#### A. Sved Has Derivative Standing

■ In order to bring a derivative suit, a shareholder must show that he fairly and adequately represents the interests of similarly situated shareholders in enforcing the right of the corporation. FED.R.CIV.P.

23.1. "Determining whether the plaintiff meets this standard is firmly committed to the discretion of the trial court, reviewable only for abuse." *Smith v. Ayres,* 977 F.2d 946, 948 (5th Cir.1992) (citing *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1040 (5th Cir.1981)), cert. denied, 508 U.S. 910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993); *see also Larson v. Dumke,* 900 F.2d 1363, 1364 (9th Cir.), cert. denied, 498 U.S. 1012, 111 S.Ct. 580, 112 L.Ed.2d 585 (1990).

■ In general, "[a] plaintiff in a shareholder derivative action ... must not have ulterior motives and must not be pursuing an external personal agenda." *Smith,* 977 F.2d at 949. A court looks to various factors in determining whether a shareholder is an adequate representative, including:

> economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally the degree of support plaintiff was receiving from the shareholders he purported to represent.

*Davis v. Comed, Inc.,* 619 F.2d 588, 593–94 (6th Cir.1980); *see also Energytec, Inc. v. Proctor,* Civil Action No. 3:06–CV–0933, 2008 WL 4131257, at *6–7 (N.D.Tex. Aug. 29, 2008).

■ The parties do not dispute that Sved is a fair and adequate representative of Home Solutions and its shareholders. There is no evidence that Sved had an ulterior motive in this action. This was a

hard fought litigation that involved complex pleadings and prolonged negotiation on behalf of the shareholders. The remedy Sved achieved for the shareholders in the derivative settlement will benefit the company and its shareholders across the board, as it involves substantial changes to the structure and operations of the company as it moves forward. The lack of objections to the derivative settlement indicates shareholder support for the ultimate result of this litigation. *See Quintanilla v. A & R Demolition Inc.,* Civil Action No. H–04–1965, 2007 WL 5166849, at *5 (S.D.Tex. May 7, 2007) (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 118 (2d Cir.2005)). There is nothing to suggest that Sved's personal interests drove this action, or that he harbored vindictiveness towards Home Solutions or its individual directors.

Sved's position with respect to the Derivative Settlement today is not at odds with the Court's finding that he is a fair and adequate representative of the shareholders' interests. Sved's withdrawal of consent is based on his perception that Home Solutions cannot abide by the corporate governance measures established in the Derivative Settlement. While the Court disagrees with Sved's assessment of the overall fairness of the agreement, Sved's position does not make him an inadequate representative. Rather, it indicates his concern that the shareholders get what they bargained for.

Because the Court finds that Sved has standing to bring this derivative suit, the Court considers whether the Derivative Settlement is fair, reasonable, and adequate.

### B. The Settlement Is Fair, Reasonable, and Adequate

■ In evaluating the fairness, reasonableness and adequacy of a settlement,

"neither the district court nor the appellate court on review should reach ultimate conclusions on the issues of law or fact underlying the dispute." *Zapata,* 714 F.2d at 455 n. 31 (citation omitted). Many Circuit Courts advise lower courts to resist "the temptation to convert [the] settlement hearing into a full trial on the merits." *Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304, 1315 (3d Cir.1993) (quoting *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677, 684 (7th Cir.1987)). This is consistent with the general view that settlements of shareholder derivative suits are "particularly favored." *Zapata,* 714 F.2d at 455.

■ Thus, the role of the district court is to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re Cendant Corp. Litig.,* 264 F.3d 201, 231 (3d Cir.2001). In considering whether a settlement is fair, reasonable, and adequate, courts looks to six factors: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of plaintiff's counsel, the derivative plaintiff, and absent shareholders. *See, e.g., Newby v. Enron Corp.,* 394 F.3d 296, 301 (5th Cir.2004); *Ayers v. Thompson,* 358 F.3d 356, 369 (5th Cir.2004); *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983); *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982); *In re OCA, Inc. Sec. and Derivative Litig.,* Civil Action No. 05–2165, 2009 WL 512081, at *11 (E.D.La. Mar. 2, 2009); *Jackson v. Capital Bank & Trust Co.,* Civil

Action Nos. 90–4734, 90–4735, 1994 WL 118322, at *4 (E.D.La. Mar. 30, 1994). The Court considers each of these factors in turn.

■ *1. There Is No Evidence of Collusion or Fraud.*—"A district court must reject a settlement agreement no matter how acceptable it may otherwise be, if it is not free from collusion or fraud." *Zapata,* 714 F.2d at 457 (citing *Saltzman v. Technicolor, Inc.,* 51 F.R.D. 178, 186 (S.D.N.Y. 1970)). In this case, there is no evidence to suggest that the settlement agreement was obtained by collusion or fraud. The fact that the parties now disagree over the issue of final approval illustrates the arms-length nature of their relationship. The settlement agreement was the product of a hard-fought mediation. Thus, this factor weighs in favor of final approval.

*2. The Complexity, Expense, and Likely Duration of the Litigation Favors Settlement.*—In general, shareholder derivative actions are "notoriously difficult and unpredictable." *Zapata,* 714 F.2d at 454. This case is no exception. It involves complex allegations of breach of fiduciary duties and insider selling against numerous individual defendants.

■ This case would be expensive and time-consuming to continue to litigate. The parties hotly contest the underlying legal issues in play. In order to prepare for trial, the parties would have to engage in extensive formal discovery. As in *In re OCA,* "the parties would undoubtedly spend large amounts of time and resources filing and contesting motions before trial." 2009 WL 512081, at *11. A trial would

require testimony from several witnesses, including expert witnesses, regarding the six causes of action alleged in Sved's eighty-six page complaint and all relevant defenses. This would not only magnify the costs of the litigation immensely, but also would increase the risk that shareholders would receive no relief at all.[4] Thus, this factor weighs in favor of settlement. *See, e.g., In re OCA,* 2009 WL 512081, at *11 ("[S]uch litigation would consume substantial judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement."); *In re Delphi Corp. Sec., Derivative & ERISA Litig.,* 248 F.R.D. 483, 498 (E.D.Mich.2008) ("[A]voiding such unnecessary expenditure of time and resources clearly benefits all parties and the court."); *Int'l Union v. Ford Motor Co.,* Civil Action Nos. 05–74730, 06–10331, 2006 WL 1984363, at *24 (E.D.Mich. July 13, 2006) ("[T]he costs and uncertainty of lengthy and complex litigation weigh in favor of settlement.").

■ *3. The Stage of the Proceedings Favors Settlement.*—The Court also considers whether the parties have gleaned sufficient information "to evaluate the merits of the competing positions." *Ayers,* 358 F.3d at 369. It looks not to the amount of discovery, but rather to "whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it." *In re OCA,* 2009 WL 512081, at *12 (citing *In re Educ. Testing Serv. Praxis Principles of Learning and*

---

4. Sved's counsel indicated at the fairness hearing that if the Court refused to approve the Derivative Settlement, he would pursue the Individual Defendants "on a contingency basis." Tr. of June 23, 2009 Fairness Hr'g at 20. While this might mitigate the amount that the corporation would spend on this litigation, it does not limit the costs of the action at large. Moreover, many of the Individual Defendants are covered by indemnity agreements with Home Solutions that may render the company liable for their defense costs. *Id.* at 12.

*Teaching: Grades 7–12 Litig.*, 447 F.Supp.2d 612, 620–21 (E.D.La.2006)). Thus, "[f]ormal discovery is not a prerequisite to settlement." *Schwartz v. TXU Corp.*, Civil Action No. 3:02–CV–2243, 2005 WL 3148350, at *19 (N.D.Tex. Nov. 8, 2005); *see In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir.1981); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.1998).

■ This case was pending for almost a year and a half before the Court received settlement papers. The parties had significant time to develop the facts of the case and evaluate their legal positions before mediation. Although the parties did not engage in formal discovery, Sved's multiple amended complaints and the dispositive motions filed by the Individual Defendants demonstrate an understanding of the underlying facts sufficient to support this settlement.

It was no secret that the company was in a difficult financial position at the time of settlement negotiations. The parties settled shortly after this Court ruled on a motion to dismiss in the *Hansen* class action, in order to maximize potential recovery for shareholders.[5] The parties understood that as the company's expenditures on this case increased, its ability to grant any kind of relief to shareholders, to pay attorneys' fees and to award an incentive payment in conjunction with a potential settlement agreement decreased. The Court is satisfied that the parties were sufficiently informed to decide whether settlement was in their best interest. This factor favors settlement.

■ ***4. Sved Faces Many Factual and Legal Obstacles to Prevailing on***
***the Merits.***—The liability of the Individual Defendants is far from clear. Before the parties agreed to the derivative settlement, the Individual Defendants sought dismissal of this case because Sved failed to either make a demand or establish demand futility. Under Delaware law, a plaintiff must plead "particularized facts" to show that the board is "incapable of exercising its power and authority to pursue the derivative claims" in order for demand to be excused as futile. *White v. Panic*, 783 A.2d 543, 551 (Del.2001). According to the Individual Defendants' motion to dismiss, Sved failed to allege such particularized facts. Defs.' Mot. to Dismiss [45] at 9. The parties entered into the derivative settlement before the Court ruled on this issue, but the Court notes that the Individual Defendants offered viable and persuasive arguments to support the motion to dismiss.[6]

■ Presuming Sved could survive the Defendants' motion to dismiss, he would face significant hurdles in establishing both liability and damages. Sved would have to overcome the substantial protection the business judgment rule affords to independent committees of the board. *See Zapata*, 714 F.2d at 465. Further, the Home Solutions certificate of incorporation includes an exculpatory clause pursuant to Delaware General Corporation Law Section 1 02(b)(7). It states:

> A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders,

---

**5.** Of the $3.5 million offered to shareholders in the *Hansen* case, $2.6 million was obtained from an insurance policy that was depleting as defense costs escalated.

**6.** In *Hansen*, the Court dismissed a number of the plaintiffs' claims under Section 10(b) of the Securities Exchange Act. *See* Order [57] dated Mar. 24, 2008 in 3:06–CV–1096.

(ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived any improper personal benefit.

Defs.' Mot. to Dismiss [45] at 12. Defendants may raise a limitation of liability clause such as this one in a Rule 12(b)(6) motion to dismiss or in a motion for summary judgment. *Malpiede v. Townson*, 780 A.2d 1075, 1092 (Del.2001). Although some of Sved's claims are clearly excluded from the exculpatory clause, it presents "a very high hurdle for Plaintiff to overcome." *In re Coca–Cola Enters., Inc. Derivative Litig.*, 478 F.Supp.2d 1369, 1374–75 (N.D.Ga.2007).

 The allegations at the heart of Sved's complaint will be difficult to prove. Sved claims that the Individual Defendants breached their fiduciary duties by misrepresenting material facts. Under Delaware law, which governs this action, "[w]hen the directors are not seeking shareholder action, but are deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement, there is a violation of fiduciary duty." *Malone v. Brincat*, 722 A.2d 5, 14 (Del.1998); *see Torch Liquidating Trust ex rel. Bridge Assoc. L.L.C. v. Stockstill*, 561 F.3d 377, 390 (5th Cir.2009). In order to establish his claim for breach of fiduciary duties based on the alleged misrepresentations of the Individual Defendants— presuming it is available despite the exculpatory clause discussed above—Sved must prove four elements: (1) deliberate misinformation either directly or through public statement; (2) reliance; (3) causation; and (4) actual, quantifiable damages. *See Malone*, 722 A.2d at 12, 14. A plaintiff must "prove that the directors 'knowingly disseminate[d] false information.' This level

of proof is similar to, but even more stringent than, the level of scienter required for common law fraud." *Metro Commc'n Corp. v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 157 (Del.Ch.2004) (quoting *Malone*, 722 A.2d at 9). Sved faces tangible risks in establishing each of these elements. The Individual Defendants ardently deny that any of the statements at issue were false, let alone intentionally so. Moreover, "[t]he elements of causation and damages present particularly difficult and complex matters for resolution at trial." *In re PNC Fin. Servs. Group, Inc.*, 440 F.Supp.2d 421, 434 (W.D.Pa.2006). In a complex litigation such as this one, the parties often provide difficult and conflicting expert testimony at trial. "Of course, the possibility that a jury may reject complex expert testimony on causation and damages always is a realistic possibility." *Id.*

Although the Court will not assess this case on the merits, it recognizes the many obstacles Sved faces in establishing his case. This factor weighs in favor of approval.

 **5. The Range of Possible Recovery and Certainty of Damages Favors Settlement.**—Unlike a class action, "a derivative suit is being brought on behalf of the corporation, [so] the recovery, if any, must go to the corporation." *Torch Liquidating Trust*, 561 F.3d at 386 (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del.2004)). Assuming that Sved could prevail in this case, it is unclear what he would gain for the company. In terms of monetary relief, there are few realistic sources of recovery. Home Solutions exhausted its available insurance proceeds in the *Hansen* class action settlement. The company's ability to recover from the Individual Defendants' personal assets is unclear, especially considering its indemnification agreement

with its directors and officers. If this case had continued to trial, Home Solutions would have further depleted its already scarce resources in exchange for damages that would be difficult to prove and perhaps even more difficult to recover.

█ The derivative settlement offers tangible, long-term remedial measures that are specifically designed to avoid the alleged missteps in Home Solutions' past and protect shareholders as the company moves forward. "[A] settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation." *Zapata,* 714 F.2d at 466 (citing *Goldman v. Northrop Corp.,* 603 F.2d 106, 108–09 (9th Cir.1979); *Lewis v. Anderson,* 81 F.R.D. 436, 438–39 (S.D.N.Y.1978); *Hill v. Art Rice Realty Co.,* 66 F.R.D. 449, 453 (N.D.Ala.1974), aff'd, 511 F.2d 1400 (5th Cir.1975); *Milstein v. Werner,* 57 F.R.D. 515, 521–23 (S.D.N.Y.1972)); *see Zimmerman v. Bell,* 800 F.2d 386, 391 (4th Cir. 1986); *Cohn v. Nelson,* 375 F.Supp.2d 844, 863 (E.D.Mo.2005). According to Sved's unopposed motion for preliminary approval of the derivative settlement, "the proposed corporate governance reforms are targeted to the allegations made in the Second Amended Complaint, including specific reforms designed to restrict transactions with potentially interested parties, improve financial reporting, and ensure the accuracy of Home Solutions' press releases." Pl.'s Unopposed Mot. for Preliminary Approval [55] at 8. The Court agrees that the remedial measures in the derivative settlement confer a meaningful benefit on Home Solutions. It is difficult to imagine any potential nonmonetary recovery that would more directly and adequately address Sved's concerns. This factor favors approval.

**6. The Opinions of Plaintiff's Counsel, the Derivative Plaintiff and Absent Shareholders Favors Settlement.** The Court received no objections to the derivative settlement, other than Sved's withdrawal of consent. Although the Court is careful not to infer too much from the lack of objections, "that fact can be viewed as indicative of the adequacy of the settlement." *Quintanilla v. A & R Demolition Inc.,* Civil Action No. H–04–1965, 2007 WL 5166849, at *5 (S.D.Tex. May 7, 2007) (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 118 (2d Cir. 2005)); *see also Zapata,* 714 F.2d at 456 (holding that the "minimal nature of shareholder objection" favors approval). Further, the Board of Directors "has consistently supported the enforcement of this settlement." Tr. of June 23, 2009 Fairness Hr'g at 9.

█ The Court pauses to consider Sved's arguments in favor of withdrawal of the Derivative Settlement. He renounced his support for the settlement because, in his view, Home Solutions could not abide by three of the agreed corporate governance measures. These provisions require the company to separate the positions of chairman of the board and chief executive officer, appoint Michael McGrath as CEO and appoint a new interim chief financial officer. After the agreement was finalized by the parties, Home Solutions complied with each of these provisions. However, shortly before the final approval hearing, Michael McGrath resigned. Later, the company's chief financial officer resigned. According to Sved, these resignations amount to a breach of the provisions of the Derivative Settlement. The Individual Defendants respond that "no company can promise that any individual employee or director can serve in perpetuity, and the company never agreed to any such thing." Tr. of June 22, 2009 Fairness Hr'g at 5.

While the Court leaves open the possibility that Sved might seek enforcement of the agreement at a later date, it finds that the resignations of these officers alone is not enough to make the settlement as a whole unfair, unreasonable, or inadequate. The company is still required to maintain the separation in the positions of chairman of the board and chief financial officer and to fill the vacant positions as promptly and prudently as possible.

To the extent that Sved's withdrawal of consent is based on Home Solutions' probable inability to pay the attorneys' fees and incentive payment on time, this Court notes that the validity of the derivative settlement does not depend on approval or payment of these amounts. Sved and his counsel have not yet applied for fees; if and when they do, this Court will award an amount that it deems appropriate in consideration of the relevant factors. If Home Solutions cannot pay the judgment amount in accordance with the Derivative Settlement, Sved is free to seek enforcement from this Court. However, this Court will not deny approval of a settlement agreement that provides meaningful, long-term remedies to the corporation and its shareholders on account of a dispute over fees.

### Conclusion

Because the Court finds the derivative settlement fair, adequate and reasonable despite Sved's withdrawal of consent, it approves the agreement. Thus, the Court incorporates the Derivative Settlement into this Order and directs the parties to abide by its terms. Without in any way affecting the finality of this Order and Final Judgment, this Court expressly retains continuing exclusive jurisdiction as to all matters relating to the administration, consummation, enforcement, and interpretation of the derivative settlement and of this Order and Final Judgment. The Court directs counsel for Sved to file an application for attorneys' fees consistent with the settlement within thirty (30) days of the date of this Order.

### ORDER ON RECONSIDERATION

This Order addresses Derivative Plaintiff Stanley Sved's ("Sved") motion for reconsideration of this Court's order granting final approval of the parties' derivative settlement agreement [69]. Because Sved fails to meet the Rule 60(b)(2) standard for reconsideration based on newly discovered evidence, the Court denies the motion.

The Court discussed the facts underlying the parties' dispute at length in its order granting final approval of the parties' derivative settlement agreement. *See* Order dated Oct. 23, 2009[65]. It will not recite them here. In short, the parties entered into a settlement agreement, which required Home Solutions to adopt a number of corporate governance measures and to pay $250,000 in attorneys' fees and a $2,000 incentive payment to Sved. Stipulation of Settlement [54–1] at 3–8.

After the Court granted preliminary approval of the settlement agreement, but before the final fairness hearing, Sved withdrew his consent to the settlement agreement because he believed that Home Solutions was "unable to fulfill one or more of its obligations under the proposed derivative settlement." Derivative Pl.'s Notice of Withdrawal [59] at 1. Specifically, the parties disputed the company's ability to comply with three of the relevant corporate governance measures and to pay the attorneys' fees and incentive award. The Court granted final approval of the settlement over Sved's objection. *See* Order dated Oct. 23, 2009[65].

Now, Sved seeks reconsideration based on "newly discovered evidence of Defendants' wrongdoing and Defendants' contin-

ued noncompliance with the settlement terms." Pl.'s Mot. for Reconsideration [69] at 1. The "newly discovered evidence" Sved presents is that the Securities Exchange Commission ("S.E.C.") recently charged Home Solutions and several executives for various violations of federal securities laws. In addition, it initiated public administrative proceedings due to the company's delinquent filings with the agency. According to Sved, these developments indicate that Home Solutions will never be able to comply with the derivative settlement agreement. Thus, Sved seeks reconsideration of this Court's order granting final approval of the agreement.

■ Federal Rule of Civil Procedure 60(b)(2) allows a party to seek relief from a judgment by showing "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." FED.R.CIV.P. 60(b). In order to succeed on a Rule 60(b)(2) motion based on newly discovered evidence, "the movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) 'the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.'" *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.,* 62 F.3d 767, 771 (5th Cir.1995) (quoting *New Hampshire Ins. Co. v. Martech USA, Inc.,* 993 F.2d 1195, 1200–01 (5th Cir.1993) (footnote omitted)); *see also Provident Life and Accident Ins. Co. v. Goel,* 274 F.3d 984, 999 (5th Cir.2001).

■ According to the Fifth Circuit, a motion under Rule 60(b)(2) "is an extraordinary motion, and the requirements of the rule must be strictly met." *Long-*

*den v. Sunderman,* 979 F.2d 1095 (5th Cir.1992) (citing *Ag Pro, Inc. v. Sakraida,* 512 F.2d 141, 143 (5th Cir.1975), *rev'd on other grounds,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976)). In general, "a motion for reconsideration is 'not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'" *Fisher v. Halliburton,* 2005 WL 2001351, at *1 (S.D.Tex.2005) (quoting *Templet v. HydroChem, Inc.,* 367 F.3d 473, 479 (5th Cir.2004)).

Sved fails to establish that the "newly discovered evidence" he presents meets the Rule 60(b)(2) standard. In particular, he does not explain how the presence of the newly filed SEC enforcement action and public administrative proceeding is "material and controlling and clearly would have produced a different result if presented before the original judgment." *See Gov't Fin. Svcs.,* 62 F.3d at 771. Although Sved makes the conclusory statement that the mere existence of the SEC proceedings renders it impossible for the Defendants to comply with the derivative settlement, this allegation, without more, is insufficient to compel a different result. As the Court noted in its October 23, 2009 Order, Sved is free to seek enforcement of the derivative settlement, which—by its terms—offers tangible, long-term remedial measures that are specifically designed to avoid the alleged missteps in Home Solutions' past and protect shareholders as the company moves forward.[1] While the Court is sympathetic that the SEC's involvement may make compliance with the settlement agreement more difficult for Home Solutions, Sved fails to show that the Court would have reached a different result if he presented this evidence before

---

1. The Court notes that the SEC's complaint is predicated on many of the same facts and allegations that Sved raised in this action.

entry of the original judgment. Thus, the Court denies Sved's motion for reconsideration.